UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLIANCE COMMUNICATIONS COOPERATIVE, INC.; BERESFORD MUNICIPAL TELEPHONE COMPANY; INTERSTATE TELECOMMUNICATIONS COOPERATIVE, INC.; MCCOOK COOPERATIVE TELEPHONE COMPANY; and SPLITROCK PROPERTIES, INC., | ) ) ) ) ) ) ) ) ) ) | Civ. 06-4221-KES |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **ORDER** |
| GLOBAL CROSSING TELECOMMUNICATIONS, INC., | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| GOLDEN WEST TELECOMMUNICATIONS COOPERATIVE, INC.; BRIDGEWATER-CANISTOTA INDEPENDENT TELEPHONE COMPANY; VIVIAN TELEPHONE COMPANY; JAMES VALLEY COOPERATIVE TELEPHONE COMPANY; NORTHERN VALLEY COMMUNICATIONS, LLC; MIDSTATE COMMUNICATIONS, INC.; MIDSTATE TELECOM, INC.; VALLEY TELECOMMUNICATIONS COOPERATIVE ASSOCIATION, INC.; VENTURE COMMUNICATIONS COOPERATIVE, INC.; WESTERN TELEPHONE COMPANY; FAITH MUNICIPAL TELEPHONE COMPANY; ONVOY, INC.; TRANSNATIONAL COMMUNICATIONS INTERNATIONAL, INC.; EXPRESS COMMUNICATIONS, INC.; and SOUTH DAKOTA NETWORKS, LLC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

_____

| | | |
|---|---|---|
| GOLDEN WEST TELECOMMUNICATIONS COOPERATIVE, INC.; | ) | 06-3023-KES |
| BRIDGEWATER CANISTOTA INDEPENDENT TELEPHONE COMPANY; | ) | |
| VIVIAN TELEPHONE COMPANY; | ) | |
| JAMES VALLEY COOPERATIVE TELEPHONE COMPANY; | ) | |
| NORTHERN VALLEY COMMUNICATIONS, LLC; | ) | |
| MIDSTATE COMMUNICATIONS, INC.; | ) | |
| MIDSTATE TELECOM, INC.; | ) | |
| SIOUX VALLEY TELEPHONE COMPANY; | ) | |
| VALLEY TELECOMMUNICATIONS COOPERATIVE ASSOCIATION, INC.; | ) | |
| VENTURE COMMUNICATIONS COOPERATIVE, INC.; | ) | |
| WEST RIVER COOPERATIVE TELEPHONE COMPANY; | ) | |
| SOUTH DAKOTA NETWORK, LLC; | ) | |

GOLDEN WEST TELECOMMUNICATIONS
COOPERATIVE, INC.;                                    )        06-3023-KES
BRIDGEWATER CANISTOTA INDEPENDENT            )
TELEPHONE COMPANY;                                   )
VIVIAN TELEPHONE COMPANY;                       )
JAMES VALLEY COOPERATIVE TELEPHONE       )
COMPANY;                                                        )
NORTHERN VALLEY COMMUNICATIONS,            )
LLC;                                                                   )
MIDSTATE COMMUNICATIONS, INC.;               )
MIDSTATE TELECOM, INC.;                              )
SIOUX VALLEY TELEPHONE COMPANY;           )
VALLEY TELECOMMUNICATIONS                       )
COOPERATIVE ASSOCIATION, INC.;                 )
VENTURE COMMUNICATIONS                            )
COOPERATIVE, INC.;                                          )
WEST RIVER COOPERATIVE TELEPHONE        )
COMPANY;                                                        )
SOUTH DAKOTA NETWORK, LLC;                     )
                                                                           )
            Plaintiffs,                                          )
                                                                           )
      vs.                                                              )
                                                                           )
ONVOY, INC. and                                               )
TRANS NATIONAL COMMUNICATIONS           )
INTERNATIONAL, INC.                                      )
                                                                           )
            Defendants,                                        )
                                                                           )
                                                                           )
GLOBAL CROSSING TELECOMMUNICATIONS,  )
INC.;                                                                   )
                                                                           )
            Defendant and                                    )
            Third-Party Plaintiff,                        )
      vs.                                                              )
                                                                           )
EXPRESS COMMUNICATIONS, INC.,                )
ALLIANCE COMMUNICATIONS COOPERATIVE, )
INC.;                                                                   )
BERESFORD MUNICIPAL TELEPHONE           )
COMPANY;                                                        )
INTERSTATE TELECOMMUNICATIONS            )
COOPERATIVE, INC.;                                          )

2

KENNEBEC TELEPHONE COMPANY, INC.;      )
MCCOOK COOPERATIVE TELEPHONE           )
COMPANY;                               )
SPLITROCK PROPERTIES, INC.,            )
                                       )
      Third-Party Defendants.          )

      Plaintiffs filed these consolidated actions[1] to recover amounts allegedly

owed pursuant to plaintiffs' tariffs filed with the Federal Communications

Commission (FCC) and the South Dakota Public Utilities Commission (PUC).

Defendants, Global Crossing Telecommunications, Inc. (Global Crossing),

Onvoy, Inc. (Onvoy), and Trans National Communications International, Inc.

(Trans National), each denied liability and filed a flurry of counterclaims,

cross-claims, and third-party claims.  This order rules on the following

pending motions:

- Onvoy's Motion to Dismiss Plaintiffs' Complaint (Civ. 06-3023-KES, Docket 24)

- Onvoy's Motion to Dismiss Global Crossing's Third-Party Complaint (Civ. 06-3023-KES, Docket 59; Civ. 06-4221-KES, Docket 27, Docket 32)

- Onvoy's Motion to Dismiss Express's Cross-Claim and for Attorneys' Fees, or Alternatively, to Transfer Venue (Civ. 06-4221-KES, Docket 46)

- Onvoy and Trans National's Joint Motion for Consolidation (Civ. 06-4221-KES, Docket 61)

- Trans National's Motion to Join Onvoy's Reply Memorandum in Support of Motion to Consolidate (Civ. 06-4221-KES, Docket 86)

---

[1] The court consolidated Civ. 06-4221-KES and Civ. 06-3023-KES on February 5, 2007.  (Civ. 06-4221-KES, Docket 33).

3

- Trans National's Motion to Dismiss Plaintiffs' Complaint (Civ. 06-3023-KES, Docket 25)

- Trans National's Motion to Dismiss Global Crossing's Third-Party Complaint (Civ. 06-3023-KES, Docket 49; Civ. 06-4221-KES, Docket 25)

- Trans National's Motion to Dismiss Express's Cross-Claim (Civ. 06-4221-KES, Docket 35)

- Plaintiffs' Motion to Dismiss Counts Two and Four of Global Crossing's Counterclaim (Civ. 06-3023-KES, Docket 54)

- Counter-Defendants and Third-Party Defendants' Joint Motion to Realign or in the Alternative Motion to Dismiss (Civ. 06-3023-KES, Docket 58; Civ. 06-4221-KES, Docket 31)

- Global Crossing's Motion to Dismiss Plaintiffs' Complaint (Civ. 06-4221-KES, Docket 87)

## BACKGROUND

Some basic background information relating to the telecommunications industry is necessary to understand this case.  Telecommunications carriers were historically divided into local telephone companies, known as local exchange carriers (LECs), and long distance providers, known as interexchange carriers (IXCs).  LECs own the telephone lines that run to and from the homes and businesses of all its subscribers, who are referred to as end users.  IXCs own the telephone lines that run between networks served by different LECs.  LECs are necessary, however, to complete "long-distance" calls because IXCs are not directly connected to end users.  Instead, when an end user places a "long-distance" call, the calling end user's LEC routes the

4

call to the IXC.  The IXC then routes the call to the called end user's LEC who completes the call.  The IXC then bills the calling end user for "long-distance service."  LECs in turn charge the IXC access fees for carrying the call to and from the end users and the IXC.  The calling end user's LEC charges an "originating" access fee and the called end user's LEC charges a "terminating" access fee.  The rates, terms, and conditions for the originating and terminating access fees are stated in tariffs filed by the LEC with the FCC and PUC.

Turning to the specifics of this case, all the plaintiffs, except South Dakota Network, LLC (SDN), are LECs located in South Dakota.  Plaintiff-LECs charge originating and terminating access fees pursuant to tariffs.  Plaintiff-LECs (along with other LECs in South Dakota) formed SDN, which provides IXCs a single point of connection for all the LECs that formed SDN.  As a result, an IXC only has to run telephone lines to SDN to connect to each LEC's network rather than running separate telephone lines to each LEC.  SDN charges "centralized equal access" fees when it switches a call from an IXC to an LEC.  The rates, terms, and conditions of SDN's centralized equal access services are governed by SDN's tariff filed with the FCC and PUC.

Plaintiff-LECs later formed Express Communications, Inc., (Express) to enable plaintiff-LECs to provide long-distance service to their end users.  Express does not, however, have the facilities to provide long-distance service because it does not own the telephone lines necessary to connect plaintiff-

5

LECs or SDN to the network of LECs in other areas.  Instead, Express purchased long-distance service from Onvoy, a reseller of long-distance service.  Onvoy in turn purchased long-distance service from Trans National.  Trans National then purchased long-distance service from Global Crossing.  As a result, when one of plaintiff-LECs' end users who has subscribed to Express places a long-distance call, the routing of the call would appear approximately like this: (1) plaintiff-LEC carries the call from the calling end user to SDN; (2) SDN switches the call to Express; (3) Express carries the call to Onvoy; (4) Onvoy carries the call to Trans National; (5) Trans National carries the call to Global Crossing; (6) Global Crossing carries the call to the called end user's LEC; and (7) the called end user's LEC completes the call.  The LECs then bill Global Crossing for originating and terminating access fees, and SDN bills Global Crossing for centralized equal access services.  Plaintiffs bring these actions to recover amounts billed for these services.

## DISCUSSION

## I.    Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

### A.    Standard of Review

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), " 'a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.' " Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1155 (9th Cir.

6

1989)) (omission in original).  The court must accept all factual allegations in the complaint as true and grant all reasonable inferences in the plaintiff's favor.  Creason v. City of Washington, 435 F.3d 820, 823 (8th Cir. 2006).  "A complaint must allege facts sufficient to state a claim as a matter of law." Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006). " 'However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal.' " Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (quoting DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002)).  If the court considers matters outside the pleadings when ruling on a motion to dismiss for failure to state a claim, the motion is converted into a motion for summary judgment under Fed. R. Civ. P. 56.  See Fed. R. Civ. P. 12(b).

**B.    Trans National's and Onvoy's Motions to Dismiss Plaintiffs' Complaint**

Count Three of plaintiffs' complaint alleges that Onvoy and Trans National are liable for amounts charged pursuant to plaintiffs' tariff.[2]  In the complaint, plaintiffs state they "bring this action against Defendants to recover damages for failure to pay plaintiffs for amounts required by federal

---

[2] Although Count Three is styled as a claim for breach of an implied contract,  the complaint, when read as a whole, indicates that Count Three is in fact an action to recover amounts owed under plaintiffs' tariffs. See Civ. 06-3023-KES, Docket 1, at ¶ 1.

and state tariffs . . . ."  (Civ. No. 06-3023-KES, Docket 1, at ¶ 1).  To recover
for amounts charged pursuant to a tariff, "plaintiffs must demonstrate (1) that
they operated under a federally filed tariff and (2) that they provided services
to the customer pursuant to that tariff."  Advamtel LLC v. AT & T Corp., 118
F. Supp. 2d 680, 683 (E.D. Va. 2000); see also Verizon N.Y. Inc. v. Global
NAPS, Inc., 463 F. Supp. 2d 330, 345 (E.D.N.Y. 2006).  " 'Under [the filed rate]
doctrine, once a carrier's tariff is approved by the FCC, the terms of the
federal tariff are considered to be 'the law' and to therefore 'conclusively and
exclusively enumerate the rights and liabilities' as between the carrier and the
customer.' "  Iowa Network Servs., Inc. v. Qwest Corp., 466 F.3d 1091, 1097
(8th Cir. 2006), cert. denied, 127 S. Ct. 2255 (2007) (quoting Evanns v. AT&T
Corp., 229 F.3d 837, 840 (9th Cir. 2000)) (alteration in original).

There is no dispute that plaintiffs were operating under validly filed
tariffs.  Rather, Onvoy and Trans National argue that the services were not
provided pursuant to the tariff because Onvoy and Trans National did not
order the services in the manner required by the tariffs.  Plaintiffs do not
dispute that neither Onvoy nor Trans National ordered the services as
required by the tariffs.  Instead, plaintiffs contend that Onvoy and Trans
National constructively ordered the services, and thus, Onvoy and Trans
National are required to pay the rates stated in plaintiffs' tariffs for the
services they received.

A party can "order" services provided under a tariff "in one of two ways: (1) by affirmatively ordering . . . or (2) by constructively ordering" the service. Am. Tel. & Tel. Co. v. City of New York, 83 F.3d 549, 553 (2d Cir. 1996). Under the "constructive order doctrine," a party receiving services is deemed to have ordered the services "when the receiver of services (1) is interconnected in such a manner that it can expect to receive access services; (2) fails to take reasonable steps to prevent the receipt of services; and (3) does in fact receive such services."  Advamtel, LLC, 118 F. Supp. 2d at 685; see also AT&T Commc'ns of the Midwest, Inc. v. Iowa Utils. Bd., 687 N.W.2d 554, 561 (Iowa 2004); United Artists Payphone Corp. v. N.Y. Tel. Co, 8 F.C.C.R. 5563 (1993).  "[T]he 'constructive order' doctrine applies to those situations in which the services are not ordered in the manner prescribed by the tariff." AT&T Commc'ns of the Midwest, Inc., 687 N.W.2d at 561.  The filed rate doctrine does not bar application of the constructive order doctrine.  See id.; see also Advamtel, LLC, 118 F. Supp. 2d at 685.

The court finds that plaintiffs' complaint alleges adequate facts stating a claim against Onvoy and Trans National for constructively ordering services.[3]

---

[3] Onvoy submitted an affidavit in support of its motion to dismiss for failure to state a claim.  Plaintiffs submitted an affidavit in opposition to the motion. The court did not consider these affidavits because, if the court considered these affidavits, then the motion to dismiss is converted into a motion for summary judgment.  See Fed. R. Civ. P. 12(b).  Plaintiffs argue, and the court agrees, that a motion for summary judgment is premature because the parties have not engaged in meaningful discovery on whether Onvoy constructively ordered services from plaintiffs.  See Dulany v. Carnahan, 132 F.3d 1234, 1238

The complaint alleges that defendants, including Onvoy and Trans National, "utilized the originating, terminating and centralized equal access services provided by Plaintiffs." (Civ. 06-3023-KES, Docket 1, at ¶ 28). The complaint alleges that plaintiffs sent the traffic to Onvoy. Id. Onvoy then routed the traffic to Global Crossing by sending the traffic over Trans National's circuit. Id.

Presumed true and granting all reasonable inferences in favor of plaintiffs, these factual allegations support all three elements of the constructive order doctrine. See Creason, 435 F.3d at 823 (stating standard of review under Rule 12(b)(6)). The court will discuss the elements in reverse order. Regarding the third element, the allegations in the complaint state that both Onvoy and Trans National "utilized" the services. This creates a reasonable inference that Onvoy and Trans National obtained the services because they cannot generally utilize a service they do not receive. Regarding the second element, the receipt of the services creates a reasonable inference that Onvoy and Trans National did not use reasonable efforts to prevent receipt of plaintiffs' services. Regarding the first element, the factual allegations in plaintiffs' complaint indicated plaintiffs are interconnected with Onvoy and Trans National because, without interconnection, plaintiffs could not send traffic to Onvoy or Trans National. Moreover, the fact that Onvoy

---

(8th Cir. 1997) (stating that the summary judgment is only appropriate after adequate time for discovery).

and Trans National contracted to resell the traffic at issue creates a reasonable inference that Onvoy and Trans National expected to receive the services when they interconnected to plaintiffs' network.

Onvoy suggests that it cannot constructively order services because Onvoy was merely acting as an intermediary that transported traffic between plaintiffs and Global Crossing.  Onvoy relies on Iowa Network Services, Inc. v. Qwest Corp., 385 F. Supp. 2d 850 (S.D. Iowa 2005), aff'd, 466 F.3d 1091 (8th Cir. 2006), cert. denied, 2007 WL 698901 (May 14, 2007), for the proposition that intermediate or transporting carriers are not liable for tariff access fees. Iowa Network Services, Inc., is distinguishable, however, because it involved "local" traffic governed by reciprocal compensation agreements rather than filed tariffs.  See Iowa Network Servs., Inc., 466 F.3d at 1096-97.  Plaintiffs' complaint alleges that the traffic at issue in this case is governed by tariffs, not reciprocal compensation agreements.  (Civ. 06-3023-KES, Docket 1).

In sum, plaintiffs' complaint states factual allegations supporting each element of the constructive order doctrine.  The court thus must presume that Onvoy and Trans National constructively ordered the services, which in turn would require them to pay the tariff rate for those services.  The court thus concludes that plaintiffs' complaint states a claim, and thus, Onvoy's and Trans National's motions to dismiss plaintiffs' complaint are denied.

## C.    Global Crossing's Motion to Dismiss Plaintiffs' Complaint

Plaintiffs assert claims against Global Crossing for breach of contract, breach of implied contract, and unjust enrichment.  (Civ. No. 06-4221-KES, Docket 1; Civ. No. 06-3023-KES, Docket 1).  Global Crossing seeks dismissal of plaintiffs' complaint under two theories.  First, Global Crossing argues that it cannot be held liable for breach of contract because Global Crossing was not a "customer" under plaintiffs' tariffs.  Second, Global Crossing argues that the "filed-rate doctrine" bars recovery for unjust enrichment.

### 1.    Breach of Contract

Plaintiffs assert claims for breach of express and implied contract based upon Global Crossing's alleged failure to pay amounts owed under the applicable tariffs.  Although styled as breach of contract actions, these claims are substantively an action to recover amounts owed under plaintiffs' tariffs, and the court construes them as such.

As indicated above, to recover for amounts owed pursuant to federal tariffs, "plaintiffs must demonstrate (1) that they operated under a federally filed tariff and (2) that they provided services to the customer pursuant to that tariff."  Advamtel LLC, 118 F. Supp. 2d at 683; see also Verizon New York Inc., 463 F. Supp. 2d at 345.  Global Crossing does not dispute that plaintiffs' tariffs are valid.  Instead, Global Crossing argues that the services were not provided pursuant to the tariffs because Global Crossing did not "order" the switching services provided by plaintiffs.

The court finds that plaintiffs' complaint contains allegations indicating that services were in fact provided pursuant to plaintiffs' tariffs. Indeed, Global Crossing admits that it owes some charges for services provided pursuant to the tariff, such as terminating access fees "associated with Global Crossing's own customers' calls terminating at a phone number of a customer of one of the [p]laintiffs." (Civ. No. 06-4221-KES, Docket 88, at 7 n.4). This alone establishes that plaintiffs' complaint states a claim for recovery of amounts owed under the tariffs.

In addition, the court finds that plaintiffs' complaint contains allegations indicating that the services were provided pursuant to plaintiffs' tariffs because Global Crossing constructively ordered the services. In the complaint filed in Civ. 06-4221-KES, plaintiffs allege that they "provided originating and terminating services to [Global Crossing]," and that plaintiffs "invoiced [Global Crossing] for use of its services in accordance with the applicable rates set forth in its tariffs . . . ." (Civ. 06-4221-KES, Docket 1, at ¶¶ 13, 15). Plaintiffs further allege that Global Crossing refuses to pay the amounts owed. Id. at ¶¶ 20, 23. Similarly, in the complaint filed in Civ. 06-3023-KES, plaintiffs allege that they "supplied services and submitted invoices to Global Crossing pursuant to their filed tariffs for services provided . . . ." (Civ. 06-3023-KES, Docket 1, at ¶ 29). Plaintiffs further allege that Global Crossing "utilized" the services, and that Global Crossing refuses to pay the amounts invoiced. Id. at ¶¶ 24, 25.

13

Presumed true and viewed liberally in favor of plaintiffs, the court finds that these factual allegations support each of the three elements for the constructive order doctrine.  Once again, the court will discuss the elements in reverse order.  The third element is supported by explicit allegations indicating that Global Crossing received switched services from plaintiffs. Regarding element two, the fact that Global Crossing received services, creates an inference that Global Crossing failed to take reasonable steps to avoid receipt of the services because, if Global Crossing had taken reasonable steps, it would not have obtained the services.  Finally, regarding element three, the receipt of services suggests that Global Crossing was interconnected with plaintiffs because otherwise Global Crossing could not receive the services. Additionally, the allegations create a reasonable inference that Global Crossing expected to receive the services because the complaint alleges that plaintiffs provided the services to Global Crossing to enable Global Crossing to complete calls for its long-distance customers.  (Civ. No. 06-4221-KES, Docket 1, at ¶¶ 1, 13; Civ. No. 06-3023-KES, Docket 1, at ¶¶ 21, 23).

Relying on 3 Rivers Telephone Cooperative v. U.S. West Communications, Inc., No. CV 99-80-GF-CSO, 2003 WL 24249671 (D. Mont. Aug. 22, 2003), Global Crossing argues that the third element is not satisfied because there are three intermediary carriers between plaintiffs and Global Crossing.  Specifically, Global Crossing contends that 3 Rivers Telephone Cooperative stands for the proposition that only IXCs directly connected with

14

LECs can be held liable for access services.  The court disagrees.  In 3 Rivers Telephone Cooperative, the court determined that Qwest, which acted as an intermediary carrier that transported traffic from other carriers to an LEC, was a customer of the LEC under the language of the tariff.  See id. at *5-13.  Qwest was thus held liable for the access fees pursuant to the tariff.  The court did not, however, determine the liability of the other carriers from whom Qwest received the services.  As a result, 3 Rivers Telephone Cooperative does not indicate that only carriers directly connected to an LEC could be held liable for access services.

Moreover, 3 Rivers Telephone Cooperative is inapposite to whether Global Crossing constructively ordered services here.  Because the court in 3 Rivers Telephone Cooperative concluded that Qwest was a "customer" under the terms of the LECs' tariffs, the court never discussed the constructive order doctrine.  Other courts, however, have applied the constructive order doctrine to an IXC even though it was not directly connected to the LEC.  The decision in Advamtel, LLC v. AT&T Corp., 118 F. Supp. 2d 680 (E.D. Va. 2000), in instructive.  In Advamtel, LLC, several competitive local exchange carriers ("CLECs")[4] sued AT&T to collect originating and terminating access fees for

_____

[4] After the break-up of AT&T in 1982, LECs operated in geographic monopolies.  See Advamtel, LLC, 118 F. Supp. 2d at 681.  These monopolistic LECs are commonly known as incumbent LECs (ILECs).  Then, in 1996, Congress adopted the Telecommunications Act of 1996, which permitted competition in the LEC market.  New companies that entered regional markets to compete with ILECs are commonly known as CLECs.

calls originating or terminating with the CLECs' end users.  Because of infrastructure costs, AT&T only had physical connections with the ILECs and not the CLECs.  As a result, when a CLEC's end user placed a long-distance call, the CLEC directed the call to the ILEC who in turn directed the call to AT&T.  The CLEC then charged AT&T an originating access fee.  Despite this indirect connection, the court held that AT&T may have constructively ordered access services from the CLECs, and thus, may be liable for access fees for those services.  See id. at 685; see also AT&T Commc'ns of the Midwest, Inc., 687 N.W.2d at 561 (applying constructive order doctrine against AT&T even though traffic was sent from a CLEC to a centralized equal access service and then to AT&T).  Like AT&T, Global Crossing may be liable pursuant to plaintiffs' tariffs if it constructively ordered the services.  And because plaintiffs' complaint contains allegations supporting each element of the constructive order doctrine, the court concludes that plaintiffs' complaint states a claim to recover amounts owed under the tariffs.  Global Crossing's motion to dismiss this claim is thus denied.

### 2.   Unjust Enrichment

Plaintiffs' complaint also asserts a claim against Global Crossing for unjust enrichment.  Global Crossing argues that this claim is barred by the "filed rate doctrine" (also called the filed tariff doctrine).  The court agrees.

Section 203(a) of the Communications Act requires telecommunications carriers to file a tariff with the FCC "showing all charges" and "showing the

classifications, practices, and regulations affecting such charges."  47 U.S.C.

§ 203(a).  Telecommunications carriers cannot "charge, demand, collect, or

receive a greater or less or different compensation" for services subject to

tariffs. 47 U.S.C. § 203(c).  The filed rate doctrine thus applies to

telecommunications carriers.  See Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.,

524 U.S. 214, 221-22, 118 S. Ct. 1956, 141 L. Ed. 2d 222 (1998).  "'Under

[the filed rate] doctrine, once a carrier's tariff is approved by the FCC, the

terms of the federal tariff are considered to be the law and to therefore

conclusively and exclusively enumerate the rights and liabilities as between

the carrier and the customer.'"  Iowa Network Servs., Inc., 466 F.3d at 1097

(8th Cir. 2006) (quoting Evanns v. AT&T Corp., 229 F.3d 837, 840 (9th Cir.

2000)) (alteration in original).  "[T]he purpose of the filed rate doctrine is to: (1)

preserve the regulating agency's authority to determine the reasonableness of

the rates; and (2) insure that regulated entities charge only those rates that

the agency has approved or been made aware of as the law may require."

Qwest Corp. v. Scott, 380 F.3d 367, 375 (8th Cir. 2004).  The filed rate doctrine

also prohibits courts from granting relief that would have the effect of

changing the rate charged for services rendered pursuant to a valid tariff.  See

Hill v. BellSouth Telecommc'ns, Inc., 364 F.3d 1308, 1316 (11th Cir. 2004).

Here, plaintiffs allege that Global Crossing was unjustly enriched when

it received originating and terminating access services without paying for

them.  If plaintiffs are successful on their unjust enrichment claim, the court

17

would order Global Crossing to pay plaintiffs the value of the benefit that
Global Crossing received.  See Hofeldt v. Mehling, 658 N.W.2d 783, 788 (S.D.
2003).  The amount corresponding to value of the benefit received will likely be
different than the amount Global Crossing would have to pay for the service
pursuant to plaintiffs' tariffs.  The court thus concludes that plaintiffs' unjust
enrichment claim is barred by the filed rate doctrine.  This conclusion is
supported by several other courts that have held that the filed rate doctrine
bars claims for unjust enrichment.  See, e.g., Marcus v. AT&T Corp., 138 F.3d
46, 60-62 (2d Cir. 1998); MCI WorldCom Network Servs., Inc. v. Paetec
Commc'ns, Inc., No. Civ. A 04-1479, 2005 WL 2145499, at *5 (E.D. Va.
Aug. 31, 2005), aff'd, 204 Fed. Appx. 271 (4th Cir. 2006); Union Tel. Co. v.
Qwest Corp., No. 02-CV-209-D, 2004 WL 4960780, at *15 (D. Wyo. May 11,
2004); Freedom Ring Commc'ns, LLC v. AT&T Corp., 229 F. Supp. 2d 67, 69-
70 (D.N.H. 2002).  Indeed, plaintiffs do not dispute that the filed rate doctrine
bars their claim for unjust enrichment if plaintiffs' tariffs are valid.  And
because there is no dispute that plaintiffs' tariffs are valid, the court finds that
plaintiffs cannot state a claim for recovery based upon unjust enrichment.
Global Crossing's motion to dismiss this claim is therefore granted.

### D.   Trans National's Motion to Dismiss Global Crossing's Third-Party Complaint

Global Crossing filed a third-party complaint (Civ. 06-4221-KES, Docket
1) and a cross-claim (Civ. 06-3023-KES, Docket 15) against Trans National

asserting the same three causes of action: (1) breach of contract; (2) quantum meruit/unjust enrichment;[5] and (3) fraud.  Trans National moves to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(3) or 12(b)(6)[6] because the forum selection clause contained in the Carrier Services Agreement entered into between Global Crossing and Trans National prevents Global Crossing from pursuing these claims in this court.  The forum selection clause provides:

> Parties acknowledge and agree that any action to enforce or interpret the terms of this Agreement shall be instituted and maintained in the Federal Court of the Western District of New York, or if jurisdiction is not available in Federal Court, then a state court located in Rochester, New York.  [Trans National] hereby consents to the jurisdiction and venue of such courts and waives any right to object to such jurisdiction and venue.

(Civ. 06-4221-KES, Docket 26, at 8).

Global Crossing does not dispute that the forum selection clause is generally enforceable.  Instead, Global Crossing argues that the forum selection clause is limited in nature, and that Global Crossing's claims against

---

[5] The third-party complaint also purports to assert a claim for constructive trust.  A constructive trust, however, is a remedy for a meritorious claim of unjust enrichment, not a separate substantive cause of action.  See, e.g., Rosebud Sioux Tribe v. Strain, 432 N.W.2d 259, 264 (S.D. 1988).

[6] According to the Court of Appeals for the Eighth Circuit, there is a split in authority regarding whether Rule 12(b)(3) or 12(b)(6) provides the proper procedure for a motion to dismiss based upon failure to comply with a forum selection clause.  See Rainforest Café, Inc. v. EklecCo, L.L.C., 340 F.3d 544, 546 n.5 (8th Cir. 2003).  The court here does not have to decide whether Rule 12(b)(3) or 12(b)(6) governs because Trans National asserted both as grounds for dismissal.  See id.

Trans National exceed the scope of the forum selection clause.  Global
Crossing also argues that the court should not enforce the forum selection
clause because it will cause unnecessary duplicitous litigation.  Finally,
Global Crossing suggests that Trans National cannot invoke the forum
selection clause because the clause is only for the benefit of Global Crossing,
which expressly waives the clause.

### 1.    Applicability of Forum Selection Clause

As a threshold matter, the court must determine whether the forum
selection clause applies to Global Crossing's claims against Trans National.
The scope of forum selection clauses is a matter of contractual interpretation.
See Vessel Sys., Inc. v. Sambucks, LLC, No. 05-CV-1028-LLR, 2007 WL
715773, at *3 (N.D. Iowa Mar. 6, 2007); see also Servewell Plumbing, LLC v.
Fed. Ins. Co., 439 F.3d 786, 788 (8th Cir. 2006) (indicating that contractual
interpretation governs the "meaning, scope, or applicability of [a] forum
selection clause").  Whether a claim is " 'governed by a forum selection
provision[ ] depends upon the intention of the parties reflected in the wording
of particular clauses and the facts of each case.' " Terra Int'l, Inc. v. Miss.
Chem. Corp., 119 F.3d 688, 693 (8th Cir. 1997) (quoting Berrett v. Life Ins. Co.
of the S.W., 623 F. Supp. 946, 948-49 (D. Utah 1985)).

Here, Global Crossing asserts three different claims against Trans
National.  The first claim seeks recovery for breach of the Carrier Services
Agreement.  Specifically, Global Crossing alleges that Trans National

purchased "switched services" but "only paid non-switched rates." (Civ. 06-4221-KES, Docket 12, at ¶ 66). This first cause of action is subject to the forum selection clause. The language of the forum selection clause indicates that it applies to "any action to enforce or interpret the terms" of the Carrier Services Agreement. Global Crossing's first claim will almost certainly require the court to interpret the terms of the contract to determine whether Trans National breached the contract. See Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd., 975 F. Supp. 483, 485-86 (W.D.N.Y. 1997) (holding that a breach of contract claim was governed by a forum selection clause that applied to "any action to enforce or interpret this Agreement").

Global Crossing's second claim asserts unjust enrichment/quantum meruit. The court finds that the forum selection clause applies to this second cause of action as well. In evaluating Global Crossing's second claim, the court will likely have to enforce or interpret the Carrier Services Agreement because a valid, express contract between the parties may bar recovery based upon quantum meruit or unjust enrichment. See Burch v. Bricker, 724 N.W.2d 604, 609-10 (S.D. 2006); Joseph Sternberg, Inc. v. Walber 36th St. Assocs., 594 N.Y.S.2d 144, 145-46 (N.Y. App. Div. 1993). Moreover, to prevail on a claim of unjust enrichment or quantum meruit, Global Crossing must, among other things, prove that Trans National was unjustly enriched by receiving services without paying for them. See Action Mech., Inc. v. Deadwood Historical Pres. Comm'n, 652 N.W.2d 742, 750 (S.D. 2002); In re

Alu, 755 N.Y.S.2d 289, 290 (N.Y. App. Div. 2003).  The viability of Global
Crossing's unjust enrichment or quantum meruit claim thus depends on
whether Trans National received a benefit without paying for it, which in turn
depends on whether Trans National fulfilled its obligations under the Carrier
Services Agreement. The court thus concludes that the forum selection clause
applies to Global Crossing's claim for quantum meruit or unjust enrichment.
See Third Ave. Trust v. Suntrust Bank, 163 F. Supp. 2d 215, 217-22 (S.D.N.Y.
2001) (stating a claim for unjust enrichment was governed by a forum
selection clause that applied to "any action to enforce, interpret or construe
any provision of this agreement").

Global Crossing's third claim alleges that Trans National committed the
tort of fraud.  Global Crossing alleges that Trans National, along with
plaintiffs, Express, and Onvoy, engaged in a broad scheme to defraud Global
Crossing by misrepresenting the nature of the traffic in this case.  The nature
of the alleged scheme is that Express provided long-distance services to
plaintiff-LECs' end users.  When an end user placed a long-distance call
through Express, the traffic was routed from the plaintiff-LEC to SDN to
Express.  Express then ordered the traffic to be routed to the private line of
Onvoy, a reseller of long-distance service.  Onvoy agreed to accept the traffic
based upon the rate for "non-switched services"[7] even though Onvoy knew or

---

[7] "Non-switched services" means that the traffic is routed over dedicated
connections to the end-user so there are no originating or terminating access

should have known the traffic was switched.  The traffic was then sent to Trans National, who also accepted it based upon the rate for "non-switched traffic" despite the fact that it knew or should have known that the traffic was actually switched.  Trans National then sent the traffic to Global Crossing and paid Global Crossing for "non-switched traffic."  Because the traffic was misrepresented as "non-switched," Global Crossing only charged Trans National 5 cents per minute for long-distance service on this traffic, while plaintiffs billed Global Crossing originating and terminating access fees of approximately 25 cents per minute.

In determining whether Global Crossing's fraud claim fits within the scope of the forum selection clause in this case, the Court of Appeals for the First Circuit's decision in <u>Lambert v. Kysar</u>, 983 F.2d 1110 (1st Cir. 1993), provides guidance.  In <u>Lambert</u>, the plaintiff purchased Christmas trees from a wholesaler.  The contract between plaintiff and the wholesaler contained a forum selection clause stating: "In the event any action is brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington." <u>Id.</u> at 1112.  After the wholesaler delivered allegedly defective trees, plaintiff asserted claims for misrepresentation, breach of contract, breach of implied warranty, and unfair business practices against the wholesaler in Massachusetts Superior Court.  The wholesaler removed the

_____

charges.  (Civ. 06-4221-KES, Docket 12, at ¶ 30).

action to federal district court and moved pursuant to Rule 12(b)(3) and (b)(6) to dismiss the claims for improper venue based upon the forum selection clause.

Among other things, plaintiff argued that the forum selection clause did not apply to his tort claims.  The First Circuit disagreed.  The court stated a general rule for determining whether a forum selection clause applies to a tort claim: "[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties."  Id.  This prevents rewarding "attempts to evade enforcement of forum selection agreements through 'artful pleading of [tort] claims' in the context of a contract dispute."  Id. (quoting Pascalides v. Irwin Yacht Sale N., Inc., 118 F.R.D. 298, 301 (D.R.I. 1988)) (alteration in original). The court held that the plaintiff's tort claims, including his claim for misrepresentation, were subject to the forum selection clause, and thus, dismissal was appropriate.

Lambert supports application of the Carrier Service Agreement's forum selection clause to Global Crossing's fraud claim.  The forum selection clause in Lambert includes language that is similar to the clause here.  Compare id. at 1112, with Civ. 06-4221-KES, Docket 26, at 1. Additionally, like the misrepresentation claim in Lambert, Global Crossing's fraud claim involves the same operative facts as Global Crossing's parallel claim for breach of contract.  In both its fraud and breach of contract claims, Global Crossing

24

essentially asserts that it was harmed when Trans National purchased and paid for "non-switched services" under the Carrier Services Agreement even though the traffic covered was in fact "switched."  Both claims will require Trans National to establish the nature of the traffic, and whether that traffic qualifies as "switched" or "non-switched" under the Carrier Services Agreement.  In fact, Global Crossing's third-party complaint asserts a breach of contract claim on virtually the same facts.  See Terra Int'l, Inc., 119 F.3d at 695 (indicating that the First Circuit's test was satisfied when the plaintiff "plainly could have asserted a parallel claim for breach of contract in the same complaint").

The Eighth Circuit's decision in Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d 688 (8th Cir. 1997), further supports application of the forum selection clause to Global Crossing's fraud claim.  In Terra, the plaintiff entered into a licensing agreement with the defendant in which the plaintiff purchased the defendant's design for an ammonium neutralization apparatus to reduce nitrate emissions.  The licensing agreement contained a forum selection clause stating "any dispute arising or disputes arising between the parties hereunder . . . will be determined in the District Court of the United States for Southern District of Mississippi."  Id. at 691 (emphasis removed).  After an explosion occurred at plaintiff's factory, plaintiff sued defendant in the Northern District of Iowa and stated two tort claims—negligent design of the neutralizer and negligent failure to train and

25

properly warn plaintiff's employees.  Defendant moved to transfer the case to Mississippi based upon, among other things, the forum selection clause.

The Eighth Circuit held that the forum selection clause applied to plaintiff's tort claims.  The court began its analysis by reviewing the language of the forum selection clause to determine whether the parties intended the forum selection clause to apply: "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of the particular clauses and the facts of each case." Id. at 693 (internal quotation omitted).  The Eighth Circuit also noted that other courts "have articulated variously phrased general rules regarding the circumstances in which a forum selection clause will apply to tort claims." Id. at 694.  The Third Circuit's rule indicates that a forum selection clause applies to tort claims if the "tort claims 'ultimately depend on the existence of a contractual relationship' between the parties . . . ." Id. (quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983), abrogated on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989)).  The Ninth Circuit's test states: " 'Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.' " Id. (quoting Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1998)).  According to the First Circuit, " 'contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum

26

selected by the contracting parties.' " Id. (quoting Lambert, 983 F.2d at 1121-22).  Although the Eighth Circuit applied the First Circuit's test under the facts of that case, the court did not embrace one specific test—instead indicating that each may be instructive depending on the facts of the case. See id. at 694-95.

Following the Eighth Circuit's directive, first the court considers the specific language of the forum selection clause, which the court finds points toward application of the forum selection clause to Global Crossing's fraud claim.  Despite asserting three different theories of recovery, Global Crossing's third-party complaint, when viewed in its entirety, is an "action to enforce or interpret the terms" of the Carrier Services Agreement.  Essentially, Global Crossing is arguing that Trans National is liable for breach of contract, unjust enrichment, and fraud for failing to pay the correct price for services purchased.  Any recovery on these claims will require the court to interpret the terms of the Carrier Services Agreement to determine whether Trans National actually failed to pay the amounts owed for the services provided.

Second, the "variously phrased general rules" further establish that Global Crossing's fraud claim is subject to the forum selection clause.  As noted above, Global Crossing's fraud claim satisfies the First Circuit's test.  Under the facts of this particular case, the Third Circuit's test is less helpful.  Although the alleged fraud could not have occurred without the existence of the contractual relationship between Global Crossing and Trans National, the

27

fraud claims assert a breach of Trans National's common law tort duty that is independent of the contract.   See Terra Int'l, Inc., 119 F.3d at 694-95 (stating that these considerations pointed in opposing directions).   The Ninth Circuit's test provides guidance and suggests that the forum selection clause applies. In order to determine whether Trans National defrauded Global Crossing by misrepresenting the nature of the traffic as  "non-switched," the court will likely have to interpret the Carrier Services Agreement to determine what constitutes "switched" and "non-switched" traffic under the agreement.   The court therefore concludes that Global Crossing's fraud claim fits within the scope of the forum selection clause in the Carrier Services Agreement.

### 2.    Enforceability of Forum Selection Clause

Global Crossing argues that Trans National cannot enforce the forum selection clause because the clause only inures to the benefit of Global Crossing, which waives enforcement of the provision.   But the plain language of the forum selection clause does not support Global Crossing's argument. The forum selection clause states "[f]or valuable consideration, both Parties acknowledge and agree" that New York will be the only venue for an action to enforce or interpret the terms of the agreement,  (Civ. 06-4221-KES, Docket 26, at 8) (emphasis added).   Rather than suggesting that only Global Crossing can enforce the forum selection clause, this language indicates that both parties agreed to be bound by the provision, and thus, either party can enforce it.   If the parties intended to only allow Global Crossing to enforce the

28

forum selection clause, they would have chosen language reflecting that intent.

Global Crossing also argues that the court should not enforce the forum selection clause because it will result in duplicitous litigation. Specifically, Global Crossing argues that it would be a waste of judicial resources to require it to defend against plaintiffs' claims in the District of South Dakota while simultaneously prosecuting its claims against Trans National in state or federal courts in New York.

"Forum selection clauses are prima facie valid and enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750, 752 (8th Cir. 1999) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).[8] If the forum selection clause is a product "of an arm's-length negotiation, the party challenging the clause bears an especially 'heavy burden of proof' to avoid its bargain." Servwell Plumbing, LLC, 439 F.3d at 789. "Only 'some compelling and countervailing

---

[8] The Eighth Circuit has not determined whether the enforceability of forum selection clauses is substantive or procedural for purposes of the Erie Doctrine, and thus, whether state or federal law applies. See Servwell Plumbing, LLC, 439 F.3d at 789 (noting split in authority regarding whether state or federal law applies). Nor must this court resolve this issue because both South Dakota and New York (the two states whose substantive law could apply) follow the unfair or unreasonable standard articulated by the Supreme Court in M/S Bremen. See Klenz v. AVI Int'l, 647 N.W.2d 734, 738-39 (S.D. 2002); Brooke Group Ltd. v. JCH Syndicate 488, 640 N.Y.S.2d 479, 481-82 (N.Y. 1996).

reason' will excuse enforcement of a bargained-for forum selection clause.'"
Id. (quoting M/S Bremen, 407 U.S. at 12, 92 S. Ct. 1907).  The clause is enforceable unless it "would actually deprive the opposing party of his fair day in court."  M.B. Restaurants, Inc., 183 F.3d at 752.

Although enforcement of the forum selection clause may create inefficient duplicitous litigation, the court finds that this is not a sufficient reason to disregard the bargain struck by the parties or to invalidate the forum selection clause.  See Fred Lurie Assocs., Inc. v. Global Alliance Logistics, Inc., 453 F. Supp. 2d 1351, 1356 (S.D. Fla. 2006); Street, Sound Around Elecs., Inc. v. M/V Royal Container, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999).  "[T]he potential for duplicative litigation . . . does not outweigh the strong policy favoring enforcement of forum selection clauses."  Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. (Ill.), Inc., 118 F. Supp. 2d 997, 1000 (C.D. Cal. 2000).

In sum, the court concludes that Trans National can enforce the forum selection clause.  Additionally, because the clause applies to each of Global Crossing's claims against Trans National, the court grants Trans National's motion to dismiss those claims.  These claims are dismissed without prejudice to enable Global Crossing to refile the claims in the proper venue.

30

### E.      Trans National's Motion to Dismiss Express's Cross-Claim

Express filed a cross-claim against Trans National asserting breach of

contract.  (Civ. No. 06-3023, Docket 56).  Specifically, Express contends that

it was a third-party beneficiary of the contract between Trans National and

Onvoy ("Trans National-Onvoy Agreement"), and that Trans National breached

the Trans National-Onvoy Agreement.  Trans National moves to dismiss the

cross-claim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(3) and argues,

among other things, that the forum selection clause contained in the Trans

National-Onvoy Agreement requires dismissal of the cross-claim.  The forum

selection clause states:

> The laws of the Commonwealth of Massachusetts shall govern the
> Service Documents and the services provided by [Trans National]
> to [Onvoy].  [Onvoy] agrees that any action brought by [Onvoy] is
> only proper in the state and federal courts located in Suffolk
> County, Massachusetts, which shall have exclusive jurisdiction
> for resolution of those disputes.

(Civ. 06-4221-KES, Docket 36-2, at 5).  Express does not dispute that the

forum selection clause applies to Express's claim.  Instead, Express argues

that the court should not enforce the forum selection clause.

As noted above, "[f]orum selection clauses are prima facie valid and

enforced unless they are unjust or unreasonable or invalid for reasons such

as fraud or overreaching."  M.B. Restaurants, 183 F.3d as 752 (citing M/S

Bremen, 407 U.S. at 15, 92 S. Ct. 1907).[9]  Express argues that enforcement of

the forum selection clause would be unjust and unreasonable because it

would cause inconvenient parallel litigation in multiple fora.  The risk of

duplicitous litigation is insufficient reason to disregard the strong policy

interest favoring enforcement of forum selection clauses.  See Tokio Marine &

Fire Ins. Co., 118 F. Supp. 2d at 1000.  Moreover, the fact that enforcement of

the forum selection clause would be inconvenient to Trans National does not

make enforcement of the clause unjust or unreasonable.  See M.B.

Restaurants, Inc., 183 F.3d at 753 ("[I]nconvenience to a party is insufficient

basis to defeat an otherwise enforceable forum selection clause.").  The court

thus concludes that the forum selection clause is enforceable.

      This conclusion is further supported by the decision in Kennebec

Telephone Co. v. Sprint Commc'ns Co., 477 F. Supp. 2d 1058 (D.S.D. 2007),

which is a sister-case identical for all purposes relevant here.  In Kennebec

Telephone Co., Express filed a third-party complaint asserting the same

breach of a third-party beneficiary contract claim against Trans National that

Express asserts in the cross-claim here.  Trans National invoked the forum

selection clause contained in the Trans National-Onvoy Agreement and moved

---

      [9] The court refrains from deciding whether federal or state law governs
enforceability of forum selection clauses because both South Dakota and
Massachusetts (the states whose law might apply) law also follow the unjust
and unreasonable standard.  See Jacobson v. Mailboxes Etc. U.S.A., Inc., 646
N.E.2d 741, 743 (Mass. 1995) (citing M/S Bremen, 407 U.S. 1, 92 S. Ct. 1907);
Klenz, 647 N.W.2d at 738-39.

to dismiss.  The court in <u>Kennebec Telephone Co.</u> held that the forum selection clause was enforceable.  <u>See</u> <u>id.</u> at 1061.  This court finds <u>Kennebec Telephone Co.</u> persuasive and adopts it here.  Thus, the court grants Trans National's motion to dismiss Express's cross-claim.  The claims are dismissed without prejudice, however, to enable Express to refile in the proper venue.[10]

### F.    Onvoy's Motion to Dismiss Express's Cross-Claim

Express filed a cross-claim against Onvoy asserting claims for breach of contract, negligent misrepresentation, and breach of the covenant of good faith and fair dealing.  (Civ. No. 06-3023, Docket 56).  Onvoy moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all three claims.  The court finds that a forum selection clause requires that these claims be litigated in Minnesota (where Onvoy resides), and thus, grants Onvoy's motion to dismiss the cross-claim.

Express purchased wholesale long distance services from Onvoy pursuant to the Onvoy Wholesale Voice Master Service Agreement ("Onvoy-Express Agreement") and the Switchless Long Distance Services Addendum to Onvoy Wholesale Voice Master Service Agreement ("Onvoy-Express Addendum").  The Onvoy-Express Agreement contains a forum selection clause that states in relevant part:

---

[10] The court refrains from reaching the other arguments for dismissal proffered by Trans National.

> This Agreement shall be governed by and construed in accordance with the laws of the state in which the Party alleged to have breached the Agreement resides, except to the extent that federal communications law applies.  Any action arising from this Agreement shall be venued in the state in which the Party alleged to have breached the Agreement resides.

(Civ. No. 06-3023, Docket 56, at 13).  Express does not dispute that the forum selection clause applies to its cross-claim against Onvoy.  Instead, Express argues that the court should not enforce the forum selection clause because it will create duplicitous litigation, thereby wasting judicial resources and inconveniencing Express.

Express asserted, and the court rejected, these same arguments in opposing enforcement of the forum selection clause against Trans National. The court rejects these arguments here for the same reasons discussed above. The risk of duplicitous litigation and inconvenience to Express are insufficient reasons to disregard the forum selection clause contained in the Onvoy-Express Agreement.  Simply put, Express has not established that enforcement of the forum selection clause would be unjust or unreasonable.[11]

This determination is validated by the decision in Kennebec Telephone Co. v. Sprint Commc'ns Co., 477 F. Supp. 2d 1058 (D.S.D. 2007).  In

---

[11] Once again, the court need not determine whether state or federal law governs the enforcement of the forum selection clauses because both Minnesota and South Dakota law follow the same standard as federal common law, namely that the clause should be enforced unless it is unjust or unreasonable.  See Klenz, 647 N.W.2d at 738-39; Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc., 320 N.W.2d 886, 889-90 (Minn. 1982).

Kennebec Telephone Co., Express asserted a third-party complaint that is substantively identical to the cross-claim here.  The court rejected Express's arguments against enforcement of the forum selection clause contained in the Onvoy-Express Agreement (the same arguments Express asserts here) and held that the forum selection clause was enforceable.  The court finds the reasoning in Kennebec Telephone Co. to be persuasive and adopts it here. The court thus concludes that forum selection clause is enforceable and dismisses Express's cross-claim.  The claims are dismissed without prejudice, however, to enable Express to refile in the proper venue.[12]

### G.    Plaintiffs' Motion to Dismiss Global Crossing's Counterclaim

Plaintiffs move to dismiss Count Two and Count Four of Global Crossing's counterclaim.  Global Crossing opposes the motion.

### 1.    Count Two

In Count Two, Global Crossing alleges that plaintiffs engaged in "unjustly and unreasonably discriminatory practices" in violation of § 202(a) of the Communications Act.  Plaintiffs argue that Global Crossing's counterclaim fails to plead adequate facts supporting a violation of § 202(a),

---

[12] The court refrains from reaching Onvoy's alternative arguments for dismissal.  Therefore, the court dismisses as moot Onvoy's motions to change venue and to dismiss for failure to state a claim.  Additionally, the court denies without prejudice Onvoy's motion for an award of attorneys' fees because that award was premised upon the court dismissing Express's cross-claim on the merits. Here, however, the court is merely dismissing the cross-claim for failure to prosecute in the proper venue without reaching the merits of Express's cross-claim.

and thus, dismissal for failure to state a claim is appropriate.  The court disagrees.

Section 202(a) states:

[i]t shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. § 202(a).  To prove a violation of § 202(a), the plaintiff must establish three elements: "(1) whether the services are 'like'; (2) if so, whether the services were provided under different terms or conditions; and (3) whether any such difference was reasonable."  Nat'l Commc'ns Ass'n, Inc. v. AT&T Corp., 238 F.3d 124, 127 (2d Cir. 2001); see also Panatronic USA v. AT&T Corp., 287 F.3d 840, 844 (9th Cir. 2002); MCI Telecomms. Corp. v. F.C.C., 917 F.2d 30, 39 (D.C. Cir. 1990).

Here, Count Two of Global Crossing's counterclaim alleges:

By charging Global Crossing for switched access and centralized equal access services that Global Crossing did not purchase and not treating similarly situated long-distance carriers in a comparable fashion, [plaintiffs] engaged in unjustly and unreasonably discriminatory practices in contravention of section 202(a) of the Communications Act of 1934, as amended.

(Civ. No. 06-3023-KES, Docket 15).  In its counterclaim, Global Crossing alleges facts supporting each essential element of a claim for violation of

§ 202(a).  By alleging that plaintiffs charged Global Crossing, and not other long-distance carriers, for switched and centralized equal access services that Global Crossing did not purchase, Global Crossing states facts supporting the first and second elements.  The third element—that the difference in price or conditions is unreasonable—is supported by Global Crossing's allegation that plaintiffs engaged in "unjustly and unreasonably discriminatory practices." The court thus concludes that Count Two states a claim for violation of § 202(a).

Plaintiffs argue that Global Crossing's counterclaim fails to adequately allege that the price discrimination was for "like" services.  Plaintiffs' argument overlooks the liberal view of notice pleading adopted by the Federal Rules of Civil Procedure.   All that is required of Global Crossing's counterclaim is "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' "  See Erickson v. Pardus, 127 S. Ct. 2197, 2220  (2007) (quoting Bell Atlantic Corp., 127 S. Ct. 1955 (2007)) (omission in original).  Additionally, the counterclaim "is to be liberally construed in the light most favorable" to Global Crossing.  Smith v. Ouchita Tech. Coll., 337 F.3d 1079, 1080 (8th Cir. 2000).

In light of these principles, Count Two of Global Crossing's counterclaim alleges sufficient facts that the alleged price discrimination was for "like"

services because Count Two alleges that plaintiffs charged Global Crossing, and not other long-distance providers, for switched access and centralized equal access services that Global Crossing did not purchase.  At a minimum, this creates an inference that Global Crossing and other long-distance providers were both obtaining "like" switched access and centralized equal access services.  See Doe ex rel. Doe v. Sch. Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003) (stating that the pleading must contain factual allegations that at least create an inference supporting an essential element of the claim).  As a result, plaintiffs' motion to dismiss Count Two is denied.

### 2.    Count Four

In Count Four, Global Crossing alleges that the content of the bills sent by plaintiffs to Global Crossing violated § 201(b) of the Communications Act, 47 U.S.C. 201(b), and the Truth-in-Billing Regulations, 47 C.F.R. § 64.2401. Plaintiffs contend that the Truth-in-Billing regulations only apply to bills sent by telecommunications carriers to end users, and not to bills sent between carriers.  Plaintiffs thus move to dismiss Count Four for failure to state a claim.  The court finds, however, that Count Four adequately states a claim for violation of § 201(b) of the Communications Act irrespective of whether the Truth-in-Billing regulations apply.

In relevant part, § 201(b) states:

All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or

> regulation that is unjust or unreasonable is declared to be
> unlawful . . . .  The Commission may prescribe such rules and
> regulations as may be necessary in the public interest to carry
> out the provisions of this chapter.

47 U.S.C. § 201(b).  Unjust or unreasonable billing practices constitute a

violation of § 201(b).  See Beattie v. CenturyTel, Inc., 234 F.R.D. 160, 172

(E.D. Mich. 2006); In re Wireless Tel. Fed. Cost Recovery Fees, No. MDL 1559

4:03-MD-015, 2004 WL 3671053, at *16 (W.D. Mo. Apr. 20, 2004); cf. In re

Truth-in-Billing and Billing Format; First Report and Order and Further

Notice of Rulemaking, 14 F.C.C.R. 7492, 7503 (May 11, 1999) (stating that

F.C.C. has power pursuant to § 201(b) to adopt regulations governing the

content of bills issued by telecommunications carriers).  Section 201(b)

prohibits a carrier from engaging in unjust or unreasonable billing practices

with another carrier.  See People's Network Inc. v. Am. Tel. & Tel. Co., 12

F.C.C.R. 21081, 21086-90 (1997).  Anyone harmed by a carrier's violation of §

201(b) can bring a claim for damages.  See 47 U.S.C. § 206.

Here, Global Crossing's complaint alleges that plaintiffs engaged in

unjust and unreasonable practices in violation of § 201(b) because plaintiffs'

bills "failed to distinguish the services rendered by Global Crossing where

Global Crossing's Feature Groups were utilized from charging Global Crossing

for traffic subject to the unlawful scheme detailed above . . . ."  (Civ. No. 06-

3023-KES, Docket 15).  Construed liberally and in the light most favorable to

Global Crossing, plaintiffs' alleged failure to segregate charges for legitimate

39

services ordered by Global Crossing from charges incurred as a result of plaintiffs' alleged fraudulent scheme could constitute an unjust or unreasonable billing practice in violation of § 201(b).  The court thus finds that Count Four states a claim for relief.  Because Court Four states a claim irrespective of whether plaintiffs also violated the Truth-in-Billing regulations, the court refrains from deciding at this time whether the Truth-in-Billing regulations apply.  Plaintiffs motion to dismiss Count Four for failure to state a claim is thus denied.

**H.    Onvoy's Motion to Dismiss Global Crossing's Third-Party Complaint**

In its third-party complaint, Global Crossing asserts two claims against Onvoy.  Count Nine alleges a claim for quantum meruit/unjust enrichment against Onvoy.[13]  Count Ten alleges a claim for deceit.  Onvoy moves to dismiss Global Crossing's claims for quantum meruit/unjust enrichment and for deceit pursuant for failure to state a claim.[14]  Global Crossing opposes the motion.

---

[13]  Count Nine also purports to assert a claim for constructive trust.  A constructive trust, however, is a remedy for a meritorious claim of unjust enrichment, not a separate substantive cause of action.  See, e.g., Rosebud Sioux Tribe, 432 N.W.2d at 264.

[14] Onvoy submitted evidence outside the pleadings and requested the court to construe its motion to dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  The court refuses to do so because a motion for summary judgment is premature.  See Dulany, 132 F.3d at 1238 (stating that the summary judgment is only appropriate after adequate time for discovery).  Accordingly, the court has considered no information outside the pleadings in ruling on this motion.

### 1.    Count Nine

In Count Nine, Global Crossing asserts a claim for quantum meruit or unjust enrichment.  "Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying."  Hofeldt, 658 N.W.2d at 788 (quoting Parker v. W. Dakota Insurors, Inc., 605 N.W.2d 181, 187 (S.D. 2000)).  "In order to establish unjust enrichment, three elements must be proven: (1) a benefit was received; (2) the recipient was cognizant of the benefit; and (3) the retention of the benefit without reimbursement would unjustly enrich the recipient."  Mack v. Mack, 613 N.W.2d 64, 69 (S.D. 2000).  Quantum meruit is "an equitable remedy to provide restitution for unjust enrichment."  Burch, 724 N.W.2d at 609 (internal quotation omitted); see also Karras v. Alpha Corp., 528 N.W.2d 397, 400 (S.D. 1995).

Global Crossing's third-party complaint contains allegations which, when viewed liberally and construed in the light most favorable to Global Crossing, supports each of these elements.  Global Crossing alleges that it provided, either directly or indirectly, "switched" services to Onvoy while Global Crossing only received payment based on the lower "non-switched" rate.  (Civ. 06-4221-KES, Docket 12, at ¶ 71).  Global Crossing further alleges that Onvoy received a benefit because it was able to repackage and resell the switched services to its customers.  Id. at ¶ 72.  These allegations satisfy the

41

first element.  Additionally, Global Crossing alleges that Onvoy engaged in a scheme to obtain these "switched" services at "non-switched" rates.  Id. at ¶ 38.  This satisfies the second element because Onvoy's active participation in a scheme to obtain the benefit of "switched" services creates an inference that Onvoy knew about the benefit when it started to receive it.  Additionally, the allegations of a fraudulent scheme, combined with allegations that Global Crossing has not been paid for the full value of services provided, support the last element.  Because the third-party complaint contains allegations supporting each of the three elements for unjust enrichment, Onvoy's motion to dismiss this claim is denied.

### 2.   Count Ten

In Count Ten, Global Crossing asserts a claim for deceit against Onvoy. Onvoy moves to dismiss the deceit claim and argues that Global Crossing failed to plead sufficient facts supporting a claim for deceit.

Global Crossing's tort claim for deceit is governed by SDCL 20-10-1, which states: "One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."  SDCL 20-10-2 defines deceit as:

(1)   The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

(2)   The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

(3)    The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4)    A promise made without any intention of performing.

"[E]very participant in a fraud and each one who assists another in the perpetration of the fraud is liable to the injured party." Tucek v. Mueller, 511 N.W.2d 832, 837 (S.D. 1994); see also Cohen v. N.W. Growth Corp., 385 F. Supp. 2d 935, 954 (D.S.D. 2005).

According to Fed. R. Civ. P. 8(a)(2), Global Crossing's third-party complaint only needs to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  When alleging fraud, however, this basic rule of pleading is augmented by Fed. R. Civ. P. 9(b), which states that "the circumstances constituting fraud shall be stated with particularity." "Under Rule 9(b), a plaintiff must plead 'such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby.' " BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (quoting Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001)).  The pleading "must identify who, what, where, when, and how" of the alleged fraud.  United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003).  Rule 9(b) must be construed consistently with Rule 8(a)'s principle of notice pleading.  See BJC Health Sys., 478 F.3d at 917.  "The special nature of fraud does not necessitate anything other than the notice of the claim; it

simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early state of the case, to potentially damaging allegations of immoral and criminal conduct." Abels, 259 F.3d at 920.  A claim for deceit alleges fraud and must be plead with particularity .  See Broin & Assocs., Inc. v. Genencor Int'l, Inc., 232 F.R.D. 335, 340 (D.S.D. 2005).

Here, the only allegation of deceit pertaining to Onvoy states: "Express, Onvoy, and [Trans National] knowingly and with intent to defraud Global Crossing made material misrepresentations of the nature of the traffic ultimately delivered to Global Crossing and/or suppressed information about the nature of the traffic knowing what the nature of the traffic was."  (Civ. 06-4221-KES, Docket 12, at ¶ 82).  Global Crossing attempts to limit the breadth of this allegation by claiming that all representations or omissions were made between October and December of 2004.  (Civ. 06-4221-KES, Docket 12, at ¶ 84).  The court finds, however, that Global Crossing's conclusory allegations fall short of satisfying Rule 9(a)'s requirement that fraud be stated with particularity.  The allegations do not clearly indicate who (Express, Onvoy, Trans National, or all three), where, or when the alleged misrepresentations were made.  Moreover, Global Crossing's allegations fail to indicate the substance of the alleged misrepresentation, instead vaguely indicating that Onvoy (among others) misrepresented or suppressed information about the nature of the "non-switched" traffic.  The court finds that these conclusory allegations of fraud lack sufficient particularity to enable Onvoy to effectively

respond.  As a result, Global Crossing's claim for deceit is dismissed without

prejudice to Global Crossing's ability to amend the third-party complaint to

comply with Rule 9(b).  See Broin & Assocs., Inc., 232 F.R.D. at 340

(dismissing deceit claim without prejudice for failure to plead with

particularity as required by Rule 9(b)).

## II.      Consolidation

Onvoy and Trans National move to consolidate this case with the

following: Civ. 06-4144-KES; Civ. 06-3025-KES; Civ. 07-3003-KES; Civ. 06-

1044-KES; Civ 06-5096-KES; Civ. 06-3028-KES; and Civ. 06-3029-KES.

Plaintiffs object to further consolidation.

The court has authority to consolidate actions pursuant to Fed. R. Civ.

P. 42(a), which states:

> When actions involving a common question of law or fact are
> pending before the court, it may order a joint hearing or trial of
> any or all the matters in issue in the actions; it may order all the
> actions consolidated; and it may make such orders concerning
> proceedings therein as may tend to avoid unnecessary costs or
> delay.

" 'The Rule should be prudently employed as a valuable and important tool of

judicial administration, invoked to expedite trial and eliminate unnecessary

repetition and confusion.'"  Bendzak v. Midland Nat'l Life Ins. Co., 240 F.R.D.

449, 450 (S.D. Iowa 2007) (quoting Delvin v. Transp. Commc'ns Int'l Union,

175 F.3d 121, 130 (2d Cir. 1999)).  The purpose of consolidation is "to avoid

unnecessary cost or delay."  Id.  "Consolidation is inappropriate, however, if it

leads to inefficiency, inconvenience, or unfair prejudice to a party." E.E.O.C. v. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998).  The district court has broad discretion in determining whether to consolidate cases containing a common question of fact or law.  See Enter. Bank v. Saettele, 21 F.3d 233, 235 (8th Cir. 1994).

The different cases seeking to be consolidated here can be broken into three groups.  The first group (referred to as the Sprint cases) includes Civ. 06-3025-KES, Civ. 06-4144-KES, and Civ. 07-3003-KES, and is composed of active cases in which plaintiffs filed claims against Sprint Communications Limited Partnership (Sprint) in federal court for failure to pay amounts owed under plaintiffs' tariffs.  The second group (referred to as the Global Crossing cases) includes Civ. 06-4221-KES and Civ. 06-3023-KES, and is composed of active cases in which plaintiffs filed claims in federal court against Global Crossing for failure to pay amounts owed under plaintiffs' tariffs.  The third group (referred to as the stayed cases) of cases involves a series of stayed actions that were originally filed in state court and removed to federal court.  Besides being filed initially in state court, the stayed cases are identical to actions in the Sprint cases and the Global Crossing cases.

Onvoy and Trans National ask the court to consolidate the Sprint cases, the Global Crossing cases, and the stayed cases.  Onvoy and Trans National argue, plaintiffs do not dispute, and the court agrees that the Sprint cases, the Global Crossing cases, and the stayed cases involve common questions of

fact and law.  Each case involves claims by plaintiff-LECs against long-distance providers (Sprint or Global Crossing) for failure to pay amounts owed under plaintiffs' tariffs for access fees.  The Sprint cases, the Global Crossing cases, and the stayed cases involve several of the same plaintiffs.  As a result, in each case, the court will likely be confronted with similar issues of whether the access services were ordered under plaintiffs' tariffs and whether the long distance provider is liable for the access services.  The court thus finds that it has the power pursuant to Rule 42(a) to consolidate the Sprint cases, the Global Crossing cases, and the stayed cases.

Next, the court must determine whether consolidation is appropriate. The court finds that consolidation of the Sprint cases and the Global Crossing cases will result in judicial efficiency and prevent unnecessary waste of judicial resources.  These cases assert identical theories of recovery by substantially the same plaintiffs against two different defendants.  The Sprint cases and the Global Crossing cases will likely involve similar legal issues. Indeed, the duplicitous motions to dismiss already filed in the Sprint cases and the Global Crossing cases foreshadow future motions practice in these cases.  By consolidating the Sprint cases and the Global Crossing cases, the court will save judicial resources because the court will not have to spend time considering and ruling on identical motions in separate cases. Additionally, consolidation will reduce the cost to the parties because the parties will only have to provide submissions for motions in one case rather

47

than several cases.  Finally, consolidation will prevent any risk of prejudice created by inconsistent rulings.  As a result, the court exercises its discretion in consolidating the Sprint cases with the Global Crossing cases.  Thus, the following cases are consolidated:

       06-4221-KES      Lead case
       06-3023-KES
       06-3025-KES
       06-4144-KES
       07-3003-KES

Further consolidation of the Sprint cases and Global Crossing cases with the stayed cases will not achieve similar judicial efficiency.  Because the stayed cases are stayed, there is no risk of duplicate motions being filed simultaneously in the stayed cases and in the Sprint and Global Crossing cases.  Additionally, there is no risk of inconsistent rulings.  The court thus refuses to exercise its discretion to consolidate the stayed cases with the Sprint cases and Global Crossing cases.  As a result, the following cases are consolidated:

       06-5096-KES      Lead case
       06-1044-KES
       06-3028-KES
       06-3029-KES

### III.   Realign Parties

Several plaintiff-LECs move to realign the parties.  Plaintiff-LECs motion is denied because the plaintiff-LECs failed to file "a written brief containing

the specific points or propositions of law" that support the relief requested.
See D.S.D. CIV. LR 7.2(A).

Based on the foregoing, it is hereby

ORDERED that Onvoy's motion (Civ. 06-3023-KES, Docket 24) to dismiss plaintiffs' complaint is denied.

IT IS FURTHER ORDERED that Trans National's motion (Civ. 06-3023-KES, Docket 25) to dismiss plaintiffs' complaint is denied.

IT IS FURTHER ORDERED that Trans National's motion (Civ. 06-3023-KES, Docket 49) to dismiss Global Crossing's third-party complaint is granted, and that all dismissed claims are dismissed without prejudice.

IT IS FURTHER ORDERED that plaintiffs' motion (Civ. 06-3023-KES, Docket 54) to dismiss Count Two and Count Four of Global Crossing's counterclaim is denied.

IT IS FURTHER ORDERED that counter-defendants and third-party defendants' motion (Civ. 06-3023-KES, Docket 58) to realign, and in the alternative, to dismiss is denied.

IT IS FURTHER ORDERED that Onvoy's motion (Civ. 06-3023-KES, Docket 59) to dismiss Global Crossing's third-party complaint is granted in part and denied in part as described herein, and that all dismissed claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Trans National's motion (Civ. 06-4221-KES, Docket 25) to dismiss Global Crossing's third-party complaint is granted, and that all claims dismissed are dismissed without prejudice.

IT IS FURTHER ORDERED that Onvoy's motion (Civ. 06-4221-KES, Docket 27) to dismiss Global Crossing's third-party complaint is granted in part and denied in part as described herein, and that all dismissed claims are dismissed without prejudice.

IT IS FURTHER ORDERED that counter-defendants and third-party defendants' motion (Civ. 06-4221-KES, Docket 31) to realign, and in the alternative, to dismiss is denied.

IT IS FURTHER ORDERED that Onvoy's motion (Civ. 06-4221-KES, Docket 32) to dismiss Global Crossing's third-party complaint is granted in part and denied in part as described herein, and that all dismissed claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Trans National's motion (Civ. 06-4221-KES, Docket 35) to dismiss Express's cross-claim is granted, and that all claims dismissed are dismissed without prejudice.

IT IS FURTHER ORDERED that Onvoy's motion (Civ. 06-4221-KES, Docket 46) to dismiss Express's cross-claim and for attorneys' fees, or alternatively, to transfer venue is granted in part and denied in part as described herein, and that all claims dismissed are dismissed without prejudice.

IT IS FURTHER ORDERED that Onvoy and Trans National's joint motion (Civ. 06-4221-KES, Docket 61) for consolidation is granted in part and denied in part as described herein.

IT IS FURTHER ORDERED that Trans National's motion (Civ. 06-4221-KES, Docket 86) for leave to join Onvoy's reply memorandum in support of motion to consolidate is granted.

IT IS FURTHER ORDERED that Global Crossing's motion (Civ. 06-4221-KES, Docket 87) motion to dismiss plaintiffs' complaint is granted in part and denied in part as described herein.

Dated July 2, 2007.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE