UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLIANCE COMMUNICATIONS COOPERATIVE, INC.; BERESFORD MUNICIPAL TELEPHONE COMPANY; INTERSTATE TELECOMMUNICATIONS COOPERATIVE, INC.; KENNEBEC TELEPHONE COMPANY, INC.; MCCOOK COOPERATIVE TELEPHONE COMPANY; and SPLITROCK PROPERTIES, INC., | ) ) ) ) ) ) ) ) ) ) ) | Civ. 06-4221-KES **ORDER GRANTING MOTION TO COMPEL DISCLOSURE OF SETTLEMENT AGREEMENT** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| GLOBAL CROSSING TELECOMMUNICATIONS, INC., | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) ) | |
| vs. | ) ) ) | |
| GOLDEN WEST TELECOMMUNICATIONS COOPERATIVE, INC.; BRIDGEWATER-CANISTOTA INDEPENDENT TELEPHONE COMPANY; VIVIAN TELEPHONE COMPANY; JAMES VALLEY COOPERATIVE TELEPHONE COMPANY; NORTHERN VALLEY COMMUNICATIONS, LLC; MIDSTATE COMMUNICATIONS, INC.; MIDSTATE TELECOM, INC.; VALLEY TELECOMMUNICATIONS COOPERATIVE ASSOCIATION, INC.; VENTURE COMMUNICATIONS COOPERATIVE, INC.; WESTERN TELEPHONE COMPANY; FAITH MUNICIPAL TELEPHONE COMPANY; ONVOY, INC.; TRANSNATIONAL COMMUNICATIONS INTERNATIONAL, INC.; EXPRESS COMMUNICATIONS, INC.; and SOUTH DAKOTA NETWORKS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

| | |
|---|---|
| GOLDEN WEST TELECOMMUNICATIONS COOPERATIVE, INC.; BRIDGEWATER CANISTOTA INDEPENDENT TELEPHONE COMPANY; VIVIAN TELEPHONE COMPANY; JAMES VALLEY COOPERATIVE TELEPHONE COMPANY; NORTHERN VALLEY COMMUNICATIONS, LLC; MIDSTATE COMMUNICATIONS, INC.; MIDSTATE TELECOM, INC.; SIOUX VALLEY TELEPHONE COMPANY; VALLEY TELECOMMUNICATIONS COOPERATIVE ASSOCIATION, INC.; VENTURE COMMUNICATIONS COOPERATIVE, INC.; WEST RIVER COOPERATIVE TELEPHONE COMPANY; SOUTH DAKOTA NETWORK, LLC; | Civ. 06-3023-KES |

GOLDEN WEST TELECOMMUNICATIONS
COOPERATIVE, INC.;                                    )    Civ. 06-3023-KES
BRIDGEWATER CANISTOTA INDEPENDENT        )
TELEPHONE COMPANY;                                )
VIVIAN TELEPHONE COMPANY;                    )
JAMES VALLEY COOPERATIVE TELEPHONE    )
COMPANY;                                                )
NORTHERN VALLEY COMMUNICATIONS, LLC;  )
MIDSTATE COMMUNICATIONS, INC.;              )
MIDSTATE TELECOM, INC.;                          )
SIOUX VALLEY TELEPHONE COMPANY;          )
VALLEY TELECOMMUNICATIONS COOPERATIVE )
ASSOCIATION, INC.;                                  )
VENTURE COMMUNICATIONS COOPERATIVE,   )
INC.;                                                        )
WEST RIVER COOPERATIVE TELEPHONE      )
COMPANY;                                                )
SOUTH DAKOTA NETWORK, LLC;                 )
                                                            )
       Plaintiffs,                               )
                                                            )
  vs.                                               )
                                                            )
ONVOY, INC. and                                    )
TRANS NATIONAL COMMUNICATIONS             )
INTERNATIONAL, INC.                               )
                                                            )
       Defendants,                             )
                                                            )
                                                            )
GLOBAL CROSSING TELECOMMUNICATIONS,   )
INC.;                                                        )
                                                            )
       Defendant and                          )
       Third-Party Plaintiff,               )
  vs.                                               )
                                                            )
EXPRESS COMMUNICATIONS, INC.,              )
ALLIANCE COMMUNICATIONS COOPERATIVE,   )
INC.;                                                        )
BERESFORD MUNICIPAL TELEPHONE            )
COMPANY;                                                )
INTERSTATE TELECOMMUNICATIONS            )
COOPERATIVE, INC.;                              )
KENNEBEC TELEPHONE COMPANY, INC.;       )
MCCOOK COOPERATIVE TELEPHONE             )
COMPANY;                                                )
SPLITROCK PROPERTIES, INC.,                 )
                                                            )
       Third-Party Defendants               )

2

GOLDEN WEST TELECOMMUNICATIONS )          Civ.  06-3025-KES
COOPERATIVE, INC.;                       )
BRIDGEWATER CANISTOTA INDEPENDENT )
TELEPHONE COMPANY;                       )
VIVIAN TELEPHONE COMPANY;                )
JAMES VALLEY COOPERATIVE TELEPHONE )
COMPANY;                                 )
NORTHERN VALLEY COMMUNICATIONS, LLC; )
MIDSTATE COMMUNICATIONS, INC.;           )
MIDSTATE TELECOM, INC.;                  )
SIOUX VALLEY TELEPHONE COMPANY;          )
VALLEY TELECOMMUNICATIONS COOPERATIVE )
ASSOCIATION, INC.;                       )
VENTURE COMMUNICATIONS COOPERATIVE, )
INC.;                                    )
WEST RIVER COOPERATIVE TELEPHONE )
COMPANY;                                 )
WESTERN TELEPHONE COMPANY;               )
FAITH MUNICIPAL TELEPHONE COMPANY; )
CHEYENNE RIVER SIOUX TRIBE TELEPHONE )
AUTHORITY;                               )
RC COMMUNICATIONS, INC.;                 )
UNION TELEPHONE COMPANY OF HARTFORD; )
ARMOUR INDEPENDENT TELEPHONE )
COMPANY; and                             )
SOUTH DAKOTA NETWORK, LLC,               )
                                         )
        Plaintiffs,                      )
    vs.                                  )
                                         )
ONVOY, INC.;                             )
TRANS NATIONAL COMMUNICATIONS )
INTERNATIONAL, INC.;                     )
                                         )
        Defendants,                      )
                                         )
    and                                  )
                                         )
SPRINT COMMUNICATIONS COMPANY LIMITED )
PARTNERSHIP,                             )
                                         )
        Defendant and                    )
        Third-Party Plaintiff,           )
                                         )
    vs.                                  )
                                         )
EXPRESS COMMUNICATIONS, INC.,            )
                                         )
        Third-Party Defendant.           )

3

ALLIANCE COMMUNICATIONS COOPERATIVE, INC.;
BERESFORD MUNICIPAL TELEPHONE COMPANY;
INTERSTATE TELECOMMUNICATIONS COOPERATIVE, INC.;
MCCOOK COOPERATIVE TELEPHONE COMPANY;
SPLITROCK PROPERTIES, INC.;
STOCKHOLM-STRANDBURG TELEPHONE COMPANY and
TRI-COUNTY TELECOM, INC.;

   Plaintiffs,

  vs.

SPRINT COMMUNICATIONS COMPANY LIMITED PARTNERSHIP,

   Defendant and
   Third-Party Plaintiff,

  vs.

EXPRESS COMMUNICATIONS, INC.,

   Third-Party Defendant and
   Fourth-Party Plaintiff,

  vs.

ONVOY, INC. and
TRANS NATIONAL COMMUNICATIONS, INC.,

   Fourth-Party Defendants.

Civ. 07-3003-KES

---

KENNEBEC TELEPHONE COMPANY, INC. and
SANTEL COMMUNICATIONS COOPERATIVE, INC.,

   Plaintiffs,

  vs.

SPRINT COMMUNICATIONS COMPANY LIMITED PARTNERSHIP,

   Defendant and
   Third-Party Plaintiff,

Civ. 06-4144-KES

vs.                                                        )
                                                           )
EXPRESS COMMUNICATIONS, INC.,                              )
                                                           )
            Third-Party Defendant.                         )
                                                           )
_____                             )
                                                           )   Civ. 07-3003-KES
ALLIANCE COMMUNICATIONS COOPERATIVE,                       )
INC.;                                                      )
BERESFORD MUNICIPAL TELEPHONE                              )
COMPANY;                                                   )
INTERSTATE TELECOMMUNICATIONS                              )
COOPERATIVE, INC.;                                         )
MCCOOK COOPERATIVE TELEPHONE                               )
COMPANY;                                                   )
SPLITROCK PROPERTIES, INC.;                                )
STOCKHOLM-STRANDBURG TELEPHONE                             )
COMPANY and                                                )
TRI-COUNTY TELECOM, INC.;                                  )
                                                           )
            Plaintiffs,                                    )
                                                           )
      vs.                                                  )
                                                           )
SPRINT COMMUNICATIONS COMPANY LIMITED                      )
PARTNERSHIP,                                               )
                                                           )
            Defendant and                                  )
            Third-Party Plaintiff,                         )
                                                           )
      vs.                                                  )
                                                           )
EXPRESS COMMUNICATIONS, INC.,                              )
                                                           )
            Third-Party Defendant and                      )
            Fourth-Party Plaintiff,                        )
                                                           )
      vs.                                                  )
                                                           )
ONVOY, INC. and                                            )
TRANS NATIONAL COMMUNICATIONS, INC.,                       )
                                                           )
            Fourth-Party Defendants.                       )

## INTRODUCTION

Pending before the court is plaintiff's motion to compel disclosure of a settlement agreement reached between defendant Trans National Communications International, Inc. (hereinafter "Trans National") and defendant Onvoy, Inc. arising out of litigation filed in state court in Massachusetts. (Docket 160). The motion to compel stems from a request served on Trans National. Trans National resists the motion on several grounds.

## FACTS

The facts, insofar as they are pertinent to the motion before the court, are as follows. These consolidated actions were filed by plaintiffs to recover amounts they claim are owed to them pursuant to tariffs filed with the Federal Communications Commission ("FCC") and the South Dakota Public Utilities Commission ("PUC"). Plaintiffs are primarily local exchange carriers ("LEC")[1] who provide telephone and other communications services to customers through wires to their homes and businesses. The LECs own the wires that attach to their customers' homes and businesses. Defendants are long distance carriers.

---

[1]Some plaintiffs are LECs and other plaintiffs are competitive local exchange carriers. Since both LECs and CLECs provide telephone and other services through wires connecting to the homes and businesses of their customers, the court refers to plaintiffs collectively as LECs for simplicity's sake.

While long distance carriers own the wires that traverse multiple LECs, they do not own the wires that actually connect to customers. Therefore, when a long distance carrier places a long-distance call for one of its customers, it must use the wires of the LECs to originate the call and to terminate the call.[2] The LECs' services in allowing the use of their wires to originate and terminate calls are known as "switched access services" or "terminating switched access" or "originating switched access." LECs charge long distance carriers for the use of their wires by charging switched access fees. The amount of switched access fees that LECs are allowed to charge are set by the FCC or PUC in documents called "tariffs."

The plaintiffs in this case except South Dakota Network, LLC ("SDN") are LECs located in South Dakota. Plaintiffs charge long-distance carriers originating and terminating access fees pursuant to their tariffs. Plaintiffs formed SDN, which provides long-distance carriers a single point of connection for all the LECs that formed SDN. As a result, a long-distance carrier only has to run telephone lines to SDN to connect to each LEC's network rather than running separate lines to each LEC. SDN charges "centralized equal access" fees when it switches a call from a long-distance carrier to an LEC. The rates, terms, and conditions of SDN's centralized access services are governed by SDN's tariff filed with the FCC and PUC.

---

[2]A long-distance call is one that originates in one LEC and terminates in a different LEC, i.e. the customer placing the call is in one LEC and the person he or she is calling is located in a different LEC.

Plaintiffs later formed Express Communications, Inc. ("Express") to enable each plaintiff to provide long-distance service to their end users. However, Express does not itself have the facilities to provide long-distance service because it does not own the telephone lines necessary to connect plaintiffs or SDN to LECs in other areas. Instead, Express purchased long-distance service from Onvoy, a reseller of long-distance service. Onvoy in turn purchased long-distance service from Trans National. Trans National then purchased long-distance service from Global Crossing and/or Sprint. As a result, when one of plaintiffs' customers places a long-distance call through an LEC that has subscribed to Express, the call appears approximately like this: (1) plaintiff-LEC carries the call from the calling customer to SDN; (2) SDN switches the call to Express; (3) Express carries the call to Onvoy; (4) Onvoy carries the call to Trans National; (5) Trans National carries the call to Global Crossing and/or Sprint; (6) Global Crossing and/or Sprint carries the call to the LEC of the customer being called; and (7) the LEC for the customer being called completes the call.

The plaintiffs then bill Global Crossing and/or Sprint for originating and terminating access fees, and SDN bills Global Crossing and/or Sprint for centralized equal access services. Plaintiffs brought these actions against defendants Sprint and Global Crossing are for unpaid charges made under plaintiffs' tarrifs for originating and terminating access fees. In the alternative, if Sprint and Global Crossing are not liable for the charges for which plaintiffs

seek payment under their tariffs, then plaintiffs allege that defendants Onvoy and Trans National are liable.

As to which defendant is liable, Onvoy has contended that Trans National was contractually obligated to put in place arrangements for the payment of access fees by Global and Sprint and that Trans National failed to do so. Trans National claims it did everything the contract with Onvoy required it to do, but that the contract did not require Trans National to put in place the underlying arrangements with Global and Sprint. This disagreement between Onvoy and Trans National led to the Massachusetts litigation in which Onvoy sued Trans National. See Onvoy, Inc. v. Trans National Communications International, Inc., Civ. Action No. 05-4207-BLS2 (Mass. Dist. Ct.). That litigation was settled and it is the settlement agreement from that litigation that plaintiffs seek to discover in this litigation.

## DISCUSSION

Trans National urges four bases for denying plaintiffs' motion to compel: (1) that plaintiffs have not satisfied the prerequisite that they attempted in good faith to resolve their discovery dispute with Trans National prior to filing the motion to compel; (2) that the discovery requests served on Trans National on October 31, 2008, were not properly served; (3) that the discovery requests served on Trans National on October 31, 2008, and on January 2, 2009, were untimely; and (4) that the settlement agreement which plaintiffs seek to compel

is not relevant to any issue in this lawsuit. The court discusses each of these arguments in turn.

## A. Certification of Attempt to Resolve the Matter in Good Faith Before Filing a Motion to Compel

Trans National argues that plaintiffs' motion to compel should be denied because they did not confer with Trans National in an attempt to resolve this matter prior to filing the instant motion. Rule 37 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion *must* include a *certification* that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

See Fed. R. Civ. P. 37(a)(1) (emphasis supplied). The local rules of civil procedure adopted by this district likewise provide that:

> No objection to interrogatories, or to requests for admissions, or to answers to either or relating to other discovery matters shall be heard unless it affirmatively appears that counsel have met, either in person or by telephone, and attempted to resolve their differences through an informal conference. . . .

See D.S.D. Civ. LR 37.1.

Neither plaintiffs' motion nor the affidavit of counsel filed in support of that motion contains a "certification" that plaintiffs conferred in good faith with Trans National before filing the instant motion. Therefore, plaintiffs have not strictly complied with Fed. R. Civ. P. 37(a)(1). Nevertheless, plaintiffs have provided the court with documents showing that they informally requested this

discovery on numerous occasions, that they served Trans National with formal

written requests for the discovery on October 31, 2008, that they requested the

discovery again orally in the deposition of Trans National's president on

November 6, 2008, that they followed up on the oral request during the

deposition of Trans National's president by sending a written letter to Trans

National's counsel on December 11, 2008, and that Trans National's response

to each of these overtures was to refuse to produce the discovery.  Trans

National does not deny this sequence of events.  Thus, after plaintiffs served

their discovery requests, they twice attempted to resolve their differences with

Trans National–once in person at the deposition of Trans National's president

and again in writing in their letter of December 11, 2008.

Therefore, although the court finds no "certification" of record by

plaintiffs as to their efforts to confer in good faith with Trans National prior to

filing the instant motion to compel, nevertheless the court finds that it

"affirmatively appears" that counsel have made good faith efforts to resolve this

matter prior to filing this motion.  See D.S.D. LR 37.1.  Accordingly, the court

will not deny plaintiffs' motion on the basis that they failed to meet and confer

with Trans National prior to filing this motion.

## B.    Whether Plaintiffs' Discovery Requests of October 31, 2008, were properly served

Trans National argues that plaintiffs' service by e-mail of the October 31,

2008, discovery requests which contained the request for the settlement

agreement was not proper.  Under Fed. R. Civ. P. 5(b)(2)(D), parties may serve

pleadings and discovery on other parties by "delivering a copy by any other means, including electronic means, consented to in writing by the person served. Service by electronic means is complete on transmission; . . ." Trans National argues that plaintiffs' service by e-mail does not constitute proper service because Trans National never consented in writing to electronic service.

However, contrary to Trans National's assertion, it *did* consent to electronic service. All three of the lawyers who signed Trans National's brief in opposition to plaintiffs' motion to compel signed an attorney registration form for electronic filing with this court. That registration provides, in pertinent part, as follows:

> By submitting this registration form, the [attorney] agrees to abide by the following rules:
>
> * * *
>
> * Registration constitutes an attorney's consent to service by electronic means as substitute for service pursuant to Federal Rules [sic] of Civil Procedure 5.

Therefore, although Trans National is correct that service by electronic means is not proper service without the party's consent under Fed. R. Civ. P. 5, the court finds that Trans National has consented in writing to electronic service. Furthermore, there is no issue of prejudice associated with Trans National's claim that service by e-mail was improper as Trans National actually received those discovery requests and filed responses to those requests on December 1, 2008. <u>See</u> Docket 162-6, Exhibit 5 (Trans National's responses to plaintiffs'

October 31, 2008, discovery requests).  The service of the October 31, 2008,

discovery requests by electronic means was not improper.

**C.  Whether Plaintiffs' Discovery Requests of October 31, 2008, or January 2, 2009, were timely**

As of October 31, 2008, the applicable deadline for concluding discovery

in this case was October 31, 2008.  See Scheduling Order, Docket 142, page 5.

However, as of that date, a motion to extend the discovery deadline was

pending with the district court.  On November 10, 2008, the court granted that

motion to extend the deadlines and set a new deadline of December 15, 2008,

for the concluding of discovery in this case.  See Scheduling Order, Docket 151,

page 5.

Plaintiffs served their first formal, written discovery request seeking a

copy of the Onvoy-Trans National settlement agreement from the

Massachusetts litigation on October 31, 2008.  The discovery request was

timely as of that date.  Whether the January 2, 2009, request was timely need

not be resolved by the court.  The October requests were timely, the October

requests included the request for the Onvoy-Trans National Massachusetts

settlement agreement, and the motion to compel is properly presented on the

October discovery requests.

**D.  Whether the Settlement Agreement is Relevant**

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard governing

the scope of discovery in civil cases:

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

See Fed. R. Civ. P. 26(b)(1).

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. . . .  In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the

14

pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

<u>See</u> Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. <u>Id.</u>; <u>see also</u> <u>Prokosch v. Catalina Lighting, Inc.</u>, 193 F.R.D. 633, 635 (D.Minn. 2000) ("[T]he threshold requirement of discoverability is whether the information sought is 'relevant to the subject matter involved in the pending action.' ") (quoting <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1326 (8th Cir. 1986)). Limiting discovery to relevant information is a necessary restriction on otherwise liberal discovery rules:

> While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

<u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1993) (internal citations omitted).

The "question of relevancy is to be more loosely construed at the discovery stage than at the trial . . ." 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, § 2008, at 99-100 (2d ed. 1994). See also Hofer, 981 F.2d at 380. The broader scope of relevance at the discovery stage is based on the fact that, "in many cases the issues will not be clearly defined at the time discovery is sought, and one of the purposes of discovery is to identify and narrow the issues." Wright, Miller & Marcus, Fed. Practice & Procedure, § 2008, at 100-101. Information is "relevant" for purposes of discovery "if there is any possibility that the information sought may be relevant to the subject matter of the action." Id. at 108-109. The scope of Rule 26 includes the discovery of information sought for impeachment purposes. Id. § 2015, at 207 (stating that "discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition.").

Discoverable information need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit..." See Fed. R. Civ. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361

16

(8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); <u>Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton</u>, 136 F.R.D. 682, 684-85 (D.Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden."). "Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery." Here, the initial burden is on plaintiffs to show how the information sought through the discovery requests that have been served are relevant to the subject matter of their case. The burden then shifts to Trans National to show that the information requested is not discoverable.

Plaintiffs have clearly demonstrated the relevance of the Massachusetts settlement agreement between Onvoy and Trans National. Presumably, since the subject of the litigation was the liability as between Onvoy and Trans National for the switched access fees relative to Global Communications and Sprint, the settlement agreement addresses the liability of Onvoy and Trans National. A settlement agreement is nothing more than a contract. If the agreement between Onvoy and Trans National had been entered into whereby they agreed as to their relative liability for plaintiffs' tariff charges *outside* the realm of litigation, that contract would clearly be subject to discovery. The fact

17

that the agreement accomplishes the same ends but was entered into as a result of litigation does not change its character for discovery purposes.

Trans National has not satisfied its burden of showing why the settlement agreement should not be discoverable.  A key issue in this case is which defendant is liable for the unpaid originating and terminating switched access fees charged by plaintiffs.  There are a string of entities involved in placing phone calls between LECs.  All are denying liability for the switched access fees.  It is more likely than not that the settlement agreement between Onvoy and Trans National over this very subject reveals something about this issue, if not as to the substantive legal issue, then for impeachment purposes.  Even if the sole relevance of the agreement is for impeachment purposes, it is still relevant for purposes of discovery.   <u>Fed. Practice & Procedure</u> § 2015, at 207.  Accordingly, the court will order Trans National to produce the document to plaintiffs for inspection or copying.

If there are confidentiality concerns that are not already covered by the parties' October 17, 2008, mutual confidentiality agreement, the parties may further stipulate as to additional protections relative to this settlement agreement.  If further protections are warranted and the parties cannot stipulate to the terms of such protections, they should notify the court and it will enter a protective order of its own drafting.

**E. Sanctions**

Rule 37(a)(5) of the Federal Rules of Civil Procedure states that if the court grants a motion to compel, or if the requested discovery is provided after a motion to compel has been filed, "the court ***must***, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." <u>See</u> Fed. R. Civ. P. 37(a)(5) (emphasis supplied). The award of fees and expenses is mandatory unless the court finds that the moving party failed to confer in good faith with the responding party prior to filing the motion, the responding party's refusal to respond was substantially justified, or other circumstances make an award of expenses unjust. <u>Id.</u> Plaintiffs have requested as part of the remedy in granting their motion to compel that Trans National be required to pay its reasonable costs and attorney's fees.

Neither party has addressed the provisions of Rule 37 in their briefs, other than the bare recitation of the request for relief contained in plaintiffs' brief. If the plaintiffs wish to have the court award attorney's fees, they shall file a motion seeking such relief within 20 days from the date of this order. Plaintiff's motion should include an itemized accounting of attorney and paralegal time spent on the motion, the hourly rate, information about the attorney and/or paralegal in support of the hourly rate, and any law or argument concerning whether Trans National's position was substantially

justified.  Trans National shall have 10 days after service of plaintiffs' motion to respond or object thereto.

## CONCLUSION

Based on the foregoing analysis, it is hereby

ORDERED that defendant Trans National provide to plaintiffs a full and complete copy of the settlement agreement entered into with Onvoy in the Massachusetts litigation known as <u>Onvoy, Inc. v. Trans National Communications International, Inc.</u>, Civ. Action No. 05-4207-BLS2 (Mass. Dist. Ct.), within 10 days of this order.  This agreement shall be subject to the confidentiality agreement previously entered into by the parties in this case or, alternatively, by a new stipulation between the parties or a subsequent order of this court if the parties do not agree that the previously-agreed to agreement is insufficient to protect concerns of confidentiality.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  <u>See</u> Fed. R. Civ. P. 72(a).  Failure to file timely objections will result in the waiver of the right to appeal matters

not raised in the objections.  Id.  Objections must be timely and specific in order to require review by the district court.

Dated February 27, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE