UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLIANCE COMMUNICATIONS COOPERATIVE, INC.; BERESFORD MUNICIPAL TELEPHONE COMPANY; INTERSTATE TELECOMMUNICATIONS COOPERATIVE, INC.; KENNEBEC TELEPHONE COMPANY, INC.; MCCOOK COOPERATIVE TELEPHONE COMPANY; and SPLITROCK PROPERTIES, INC., | ) ) ) ) ) ) ) ) ) ) ) | Civ. 06-4221-KES |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| GLOBAL CROSSING TELECOMMUNICATIONS, INC., | ) ) ) | |
| Defendant and Third-Party Plaintiff, | ) ) ) ) | |
| vs. | ) ) ) | |
| GOLDEN WEST TELECOMMUNICATIONS COOPERATIVE, INC.; BRIDGEWATER-CANISTOTA INDEPENDENT TELEPHONE COMPANY; VIVIAN TELEPHONE COMPANY; JAMES VALLEY COOPERATIVE TELEPHONE COMPANY; NORTHERN VALLEY COMMUNICATIONS, LLC; MIDSTATE COMMUNICATIONS, INC.; MIDSTATE TELECOM, INC.; VALLEY TELECOMMUNICATIONS COOPERATIVE ASSOCIATION, INC.; VENTURE COMMUNICATIONS COOPERATIVE, INC.; WESTERN TELEPHONE COMPANY; FAITH MUNICIPAL TELEPHONE COMPANY; ONVOY, INC.; TRANS NATIONAL COMMUNICATIONS INTERNATIONAL, INC.; EXPRESS COMMUNICATIONS, INC.; and SOUTH DAKOTA NETWORKS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| Third-Party Defendants. | ) ) | |

GOLDEN WEST TELECOMMUNICATIONS )    Civ. 06-3023-KES
COOPERATIVE, INC.;                 )
BRIDGEWATER CANISTOTA INDEPENDENT  )
TELEPHONE COMPANY;                 )
VIVIAN TELEPHONE COMPANY;          )
JAMES VALLEY COOPERATIVE TELEPHONE )
COMPANY;                           )
NORTHERN VALLEY COMMUNICATIONS, LLC; )
MIDSTATE COMMUNICATIONS, INC.;     )
MIDSTATE TELECOM, INC.;            )
SIOUX VALLEY TELEPHONE COMPANY;    )
VALLEY TELECOMMUNICATIONS COOPERATIVE )
ASSOCIATION, INC.;                 )
VENTURE COMMUNICATIONS COOPERATIVE, )
INC.;                              )
WEST RIVER COOPERATIVE TELEPHONE   )
COMPANY;                           )
SOUTH DAKOTA NETWORK, LLC;         )
                                   )
        Plaintiffs,                )
                                   )
    vs.                            )
                                   )
ONVOY, INC. and                    )
TRANS NATIONAL COMMUNICATIONS      )
INTERNATIONAL, INC.                )
                                   )
        Defendants,                )
                                   )
                                   )
GLOBAL CROSSING TELECOMMUNICATIONS, )
INC.;                              )
                                   )
        Defendant and              )
        Third-Party Plaintiff,     )
    vs.                            )
                                   )
EXPRESS COMMUNICATIONS, INC.,      )
ALLIANCE COMMUNICATIONS COOPERATIVE, )
INC.;                              )
BERESFORD MUNICIPAL TELEPHONE      )
COMPANY;                           )
INTERSTATE TELECOMMUNICATIONS      )
COOPERATIVE, INC.;                 )
KENNEBEC TELEPHONE COMPANY, INC.;  )
MCCOOK COOPERATIVE TELEPHONE       )
COMPANY;                           )
SPLITROCK PROPERTIES, INC.,        )
                                   )
        Third-Party Defendants     )

2

GOLDEN WEST TELECOMMUNICATIONS                      )          Civ.  06-3025-KES
COOPERATIVE, INC.;                                  )
BRIDGEWATER CANISTOTA INDEPENDENT                   )
TELEPHONE COMPANY;                                  )
VIVIAN TELEPHONE COMPANY;                           )
JAMES VALLEY COOPERATIVE TELEPHONE                  )
COMPANY;                                            )
NORTHERN VALLEY COMMUNICATIONS, LLC;                )
MIDSTATE COMMUNICATIONS, INC.;                      )
MIDSTATE TELECOM, INC.;                             )
SIOUX VALLEY TELEPHONE COMPANY;                     )
VALLEY TELECOMMUNICATIONS COOPERATIVE               )
ASSOCIATION, INC.;                                  )
VENTURE COMMUNICATIONS COOPERATIVE,                 )
INC.;                                               )
WEST RIVER COOPERATIVE TELEPHONE                    )
COMPANY;                                            )
WESTERN TELEPHONE COMPANY;                          )
FAITH MUNICIPAL TELEPHONE COMPANY;                  )
CHEYENNE RIVER SIOUX TRIBE TELEPHONE                )
AUTHORITY;                                          )
RC COMMUNICATIONS, INC.;                            )
UNION TELEPHONE COMPANY OF HARTFORD;                )
ARMOUR INDEPENDENT TELEPHONE                        )
COMPANY; and                                        )
SOUTH DAKOTA NETWORK, LLC,                          )
                                                    )
          Plaintiffs,                               )
     vs.                                            )
                                                    )
ONVOY, INC.;                                        )
TRANS NATIONAL COMMUNICATIONS                       )
INTERNATIONAL, INC.;                                )
                                                    )
          Defendants,                               )
                                                    )
     and                                            )
                                                    )
SPRINT COMMUNICATIONS COMPANY LIMITED               )
PARTNERSHIP,                                        )
                                                    )
          Defendant and                             )
          Third-Party Plaintiff,                    )
                                                    )
     vs.                                            )
                                                    )
EXPRESS COMMUNICATIONS, INC.,                       )
                                                    )
          Third-Party Defendant.                    )

KENNEBEC TELEPHONE COMPANY, INC. and )     Civ. 06-4144-KES
SANTEL COMMUNICATIONS COOPERATIVE, )
INC.,                               )
                                    )
            Plaintiffs,             )
                                    )
    vs.                             )
                                    )
SPRINT COMMUNICATIONS COMPANY LIMITED )
PARTNERSHIP,                        )
                                    )
            Defendant and           )
            Third-Party Plaintiff,   )
                                    )
    vs.                             )
                                    )
EXPRESS COMMUNICATIONS, INC.,       )
                                    )
            Third-Party Defendant.  )

_____     Civ. 07-3003-KES

ALLIANCE COMMUNICATIONS COOPERATIVE, )
INC.;                               )
BERESFORD MUNICIPAL TELEPHONE       )
COMPANY;                            )
INTERSTATE TELECOMMUNICATIONS       )
COOPERATIVE, INC.;                  )
MCCOOK COOPERATIVE TELEPHONE        )
COMPANY;                            )
SPLITROCK PROPERTIES, INC.;         )
STOCKHOLM-STRANDBURG TELEPHONE      )
COMPANY and                         )
TRI-COUNTY TELECOM, INC.;           )
                                    )
            Plaintiffs,             )
                                    )
    vs.                             )
                                    )
SPRINT COMMUNICATIONS COMPANY LIMITED )
PARTNERSHIP,                        )
                                    )
            Defendant and           )
            Third-Party Plaintiff,   )
                                    )
    vs.                             )
                                    )
EXPRESS COMMUNICATIONS, INC.,       )
                                    )
            Third-Party Defendant and )
            Fourth-Party Plaintiff,   )

4

vs.                                                    )
                                                       )
ONVOY, INC. and                                        )
TRANS NATIONAL COMMUNICATIONS                          )
INTERNATIONAL, INC.,                                   )
                                                       )
　　　　Fourth-Party Defendants.                        )

Plaintiffs move for reconsideration of the court's order denying defendant Onvoy, Inc.'s (Onvoy) motion for summary judgment, granting defendant Trans National Communications International, Inc.'s (TNCI) motion for summary judgment, denying defendant Global Crossing Telecommunications, Inc.'s (Global Crossing) motion for summary judgment, granting in part and denying in part defendant Sprint Communications Company Limited Partnership's (Sprint) motion for summary judgment, granting plaintiffs' motion for summary judgment on Global Crossing's counterclaims, and granting in part and denying in part third-party defendant Express Communications, Inc.'s (Express) motion for summary judgment on Global Crossing's and Sprint's third-party complaints. See Order, Docket 253. Specifically, plaintiffs seek reconsideration of the court's factual determination that "none of defendants subscribed to plaintiffs' switched access services by submitting an Access Order as prescribed in the tariffs." Id. at 22. Plaintiffs also seek reconsideration of the court's ruling that TNCI, Global Crossing, and Sprint did not constructively order services under plaintiffs' tariffs. Onvoy, TNCI, Global Crossing, and Sprint oppose plaintiffs' motion to reconsider.

## BACKGROUND

Plaintiffs, a group composed of local exchange carriers (LECs) located in South Dakota, and centralized equal access provider South Dakota Network, LLC (SDN), filed this consolidated action against defendants to recover access charges allegedly owed pursuant to plaintiffs' tariffs filed with the Federal Communications Commission (FCC) and the South Dakota Public Utilities Commission (SDPUC).  A number of counterclaims, third-party complaints, and cross-claims were also filed, but plaintiffs' present motion does not implicate those claims.

On September 21, 2009, the court issued an order ruling on defendants' summary judgment motions (hereinafter referred to as "summary judgment order").  The court found that "none of defendants subscribed to plaintiffs' switched access services by submitting an Access Order as prescribed in the tariffs," but went on to consider whether each defendant constructively ordered services under plaintiffs' tariffs.  Id. at 22.  The court found that there were disputed issues of material fact relating to the issue of whether Onvoy constructively ordered originating access services under plaintiffs' tariffs and was therefore liable for the associated access charges.  As a result, the court denied Onvoy's motion for summary judgment.  With respect to TNCI, Global Crossing, and Sprint, however, the court found as a matter of law that these parties did not receive access services under plaintiffs' tariffs (with respect to

the traffic at issue), and as a result did not constructively order access services and become liable for access charges. Thus, the court granted TNCI's motion for summary judgment and denied Global Crossing's and Sprint's motions for summary judgment on the limited issue of whether Global Crossing and Sprint had paid plaintiffs for access services they admitted to ordering and receiving.

Plaintiffs now argue that the court erred in finding that "none of defendants subscribed to plaintiffs' switched access services by submitting an Access Order as prescribed in the tariffs" and in failing to consider issues of material fact that may establish that TNCI, Global Crossing, and Sprint are liable under the constructive ordering doctrine. The court will consider plaintiffs' second contention first.

## STANDARD

The Federal Rules of Civil Procedure do not mention motions to reconsider. The Eighth Circuit has instructed courts to consider such motions either under Rule 59(e) or Rule 60(b). Sanders v. Clemco Indus., 862 F.2d 161, 168 (8th Cir. 1988); see also Schoffstall v. Henderson, 223 F.3d 818, 827 (8th Cir. 2000) (holding that Rule 59(e) applies to a motion to reconsider); Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999) (analyzing whether Rule 59(e) or Rule 60(b) applies to a motion to reconsider). Here, plaintiffs move under Rule 59(e), which permits a party to file a motion to alter or amend a judgment

within ten days[1] of that judgment. Fed. R. Civ. P. 59(e). Rule 59(e) refers to entry of judgment, but some authority indicates that a district court may entertain a Rule 59(e) motion before the entry of final judgment on a separate document. Sanders, 862 F.2d at 168 n.12.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir.), as amended, 835 F.2d 710 (7th Cir. 1987)). A Rule 59(e) motion cannot be used "to introduce new evidence that could have been adduced during pendency of the summary judgment motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993) (quoting Hagerman, 839 F.2d at 414). District courts have broad discretion in determining whether to grant a motion for reconsideration. Hagerman, 839 F.2d at 413-14.

---

[1] Plaintiffs' motion for reconsideration was filed before the December 1, 2009, amendment to Rule 59(e) extending the 10-day period to a 28-day period.

**DISCUSSION**

**I.      Motion to Reconsider Court's Finding That TNCI, Global Crossing, and Sprint Did Not Constructively Order Services**

Plaintiffs seek reconsideration of the portion of the court's summary judgment order that concludes that, as a matter of law, the constructive ordering doctrine does not apply to TNCI, Global Crossing, and Sprint. Plaintiffs "submit that because of the business relationships that existed among all of the parties, the constructive ordering doctrine may apply to all of the carriers in this case, and the trier of fact should be allowed to view the flow of traffic among all of the carriers and then determine the respective liability of the parties."  Plaintiffs' Memorandum of Law in Support of Their Motion for Reconsideration of Memorandum Opinion and Order Dated September 29, 2009, Docket 255 at 11-12.  The court finds that plaintiffs do not advance any new evidence or arguments of law explaining why the court should change the summary judgment order and deny TNCI's, Global Crossing's, and Sprint's motions for summary judgment.  Plaintiffs' failure to provide any new reasons why summary judgment was inappropriate is reason enough for the court to deny plaintiffs' motion for reconsideration of this portion of the court's summary judgment order.  See Schoffstall, 223 F.3d at 827 (finding that district court did not abuse its discretion by denying a motion for reconsideration where the movant merely restated the arguments it made in opposition to summary judgment and provided no additional reasons why

9

summary judgment was inappropriate). But the court has considered the substance of plaintiffs' arguments and finds them to be without merit.

Plaintiffs request that the court reconsider the business relationships that existed between the various parties and find that in light of these business relationships, the constructive ordering doctrine "should be applied through the entire communications path of the traffic, not just isolated segments of the path." Id. at 14. Plaintiffs' argument misses the rule that the terms of the relevant tariffs, and not the business relationships of the parties or the entire communications path of the traffic, are dispositive of the issue of liability for access charges pursuant to those tariffs. As the court explained in the summary judgment order, because plaintiffs seek to recover access charges owed pursuant to their tariffs, the relevant question is whether plaintiffs provided each defendant with access services pursuant to their tariffs. See Advamtel LLC v. AT & T Corp., 118 F. Supp. 2d 680, 683 (E.D. Va. 2000) (explaining that to recover for amounts charged pursuant to their tariffs, plaintiffs must show that they operated under a valid tariff and that they provided services to the customer pursuant to that tariff); see also American Tel. & Tel. Co. v. City of New York, 83 F.3d 549, 552 (2d Cir. 1996) (setting out terms of relevant tariff in determining whether defendant was obligated to pay charges under the tariff).

Here, plaintiffs' tariffs apply to plaintiffs' "customers," and a "customer" is an individual or entity that subscribes to the services offered therein. An individual or entity may subscribe to the services offered in plaintiffs' tariffs "in one of two ways: (1) by affirmatively ordering . . . or (2) by constructively ordering" the service. City of New York, 83 F.3d at 553. Under the constructive ordering doctrine, an individual or entity that does not follow the ordering provisions contained within the relevant tariff is deemed to have subscribed to or ordered the services offered in the tariff if the receiver of services (1) is interconnected in such a manner that it can expect to receive access services, (2) fails to take reasonable steps to prevent the receipt of services, and (3) does in fact receive such services. Advamtel, 118 F. Supp. 2d at 685. Under the third requirement of the constructive ordering doctrine, a party must have actually received the services offered in the relevant tariff to be liable.

Plaintiffs' tariffs provide detailed and specific definitions of "switched access service." Under plaintiff-LECs' tariffs, switched access service is a two-point communications path between a customer's designated premise and an end user's premise. National Exchange Carrier Association, Inc's Tariff F.C.C. No. 5, § 6.1 (available at Docket 193-7); Local Exchange Carrier Association, Inc.'s Tariff No. 1, § 6.1 (available at Docket 192-6). Under SDN's tariffs, switched access service is a communications path between plaintiff-LECs and

SDN's centralized equal access tandem where a customer's traffic is switched to originate or terminate its communications, and the customer's point of interconnection is the demarcation point or network interface between SDN's communications facilities located at the SDN tandem switch and customer provided facilities. SDN's Tariff F.C.C. No. 1, § 6.1 (available at Docket 192-6 and 239-18); SDN's South Dakota Tariff No. 2, § 6.1 (available at Docket 186-4 and 186-5). As the court explained in its summary judgment order, TNCI, Global Crossing, and Sprint did not designate premises at which plaintiff-LECs delivered traffic originating from end users or provide any facilities at which SDN switched the Express traffic. Thus, TNCI, Global Crossing, and Sprint did not receive "switched access service" as that term is defined in plaintiffs' tariffs, so these defendants are not liable for switched access charges under plaintiffs' tariffs.

Nothing in plaintiffs' motion for reconsideration indicates that the court applied the wrong law, that the court misinterpreted the applicable tariffs, or that the court failed to consider material facts. Plaintiffs set out facts about Express and its contractual relationships with facilities-based carriers, the role of intermediary carriers in carrying the Express traffic, the single point of interconnection provided by SDN, Onvoy's role in facilitating the agreement between the interexchange carriers and TNCI and Express, and the prevalence of arrangements like this in the industry. These facts were all set out in

12

plaintiffs' briefs opposing summary judgment and, to the extent they are relevant, considered by the court in the summary judgment order. See Order at 7-15.

In their motion for reconsideration, plaintiffs cite 3 Rivers Telephone Cooperative, Inc. v. U.S. West Communications, Inc., No. CV 99-80-GF-CSO, 2003 WL 24249671 (D. Mont. Aug. 22, 2003), for the proposition that the constructive ordering doctrine applies even when there are multiple intermediary carriers. Plaintiffs argue that the Express traffic traversed the entire communications path that was established by Onvoy, TNCI, Global Crossing, and Sprint in order to reach the end user receiving the call. Plaintiffs previously cited 3 Rivers in response to Onvoy's argument that the constructive ordering doctrine is inapplicable to intermediary carriers. Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment Filed by Onvoy, Inc., Docket 207 at 24. Now plaintiffs attempt to conflate the proposition that the constructive ordering doctrine is not rendered inapplicable merely because a carrier is an intermediary carrier with respect to the traffic in question with the proposition that the constructive ordering doctrine *always* applies to an intermediary carrier.

3 Rivers does not support plaintiffs' proposition. This case does not apply (or even mention) the constructive ordering doctrine. Indeed, the court found as a matter of law that the defendant interexchange carrier was a

"customer" that received switched access services as defined in the relevant tariffs. 3 Rivers, 2003 WL 24249671, at *7, *9. In 3 Rivers, the defendant interexchange carrier did not dispute that it received such services. Id. at *7. Thus, the court did not analyze the constructive ordering doctrine.

Moreover, 3 Rivers is distinguishable from the present case. In that case, the court found that the defendant interexchange carrier was responsible for **terminating** access charges regardless of where the traffic **originated**. Id. at *11. That is, the court rejected the defendant interexchange carrier's contention that it was not responsible for terminating access charges associated with traffic it delivered to the plaintiff-LECs because that traffic was originated by subscribers of other carriers. See id. at *3. Thus, in 3 Rivers, there was no dispute that the defendant interexchange carrier actually delivered traffic to the plaintiff-LECs for termination. The present case, on the other hand, involves liability for **originating** access charges where the defendant carriers picked up the traffic at some point after plaintiffs switched the traffic. Unlike the defendant in 3 Rivers, here, TNCI, Global Crossing, and Sprint deny that they received the traffic from plaintiffs. None of these defendants picked up the traffic at SDN's switch in Sioux Falls. The fact that the involvement of an intermediary carrier earlier in the traffic flow did not absolve the defendant interexchange carrier from liability for **terminating** access charges in 3 Rivers does not mean that the involvement of intermediary

carriers earlier in the traffic flow does not absolve TNCI, Global Crossing, and Sprint of liability for *originating* access charges in this case. Simply put, 3 Rivers does not address the same situation or issues that are at the heart of the present case. Plaintiffs' continued reliance on 3 Rivers does not support their motion for reconsideration.

Next, plaintiffs argue that given the procedural posture of this case, there is no meaningful distinction between Onvoy and TNCI, Global Crossing, and Sprint and that because of the business relationships among them, they are all customers of plaintiffs' access services. In support of this argument, plaintiffs quote the deposition testimony of plaintiffs' expert asserting that TNCI, Global Crossing, and Sprint were all customers of plaintiffs because they were "provided" the service in that the calls were originated, transported, and switched. As an initial matter, the court is not required to substitute its interpretation of the language of plaintiffs' tariffs with the conclusory legal assertions of plaintiffs' expert. And as the court explained in its original order, TNCI, Global Crossing, and Sprint did not receive access services within the meaning of plaintiffs' tariffs because they did not designate premises at which plaintiff-LECs delivered traffic originating from end users or provide any facilities at which SDN switched the Express traffic. Thus, the difference between Onvoy on the one hand and TNCI, Global Crossing, and Sprint on the other is that there are disputed facts that may show that Onvoy did designate

or provide such facilities, and there are no facts showing that TNCI, Global Crossing, or Sprint did so. Contrary to the assertion of plaintiffs' expert witness, the facts that "[t]he calls were originated, transported, [and] switched [and that] [t]he equal access look-up was done and they were routed onto the network of Onvoy and the parties" does not mean that TNCI, Global Crossing, or Sprint received the services under plaintiffs' tariffs. See Deposition of Eileen Bodamer, Docket 211-12 at 44. Indeed, plaintiffs' assertion ignores the court's distinction between "receiving" services and "benefitting from" services. See Order at 36-38.

Next plaintiffs argue that the traffic remained "Express traffic" and subject to plaintiffs' tariffs until Global Crossing or Sprint delivered the traffic to the LEC serving the end user customer receiving the call. In support of this argument, plaintiffs quote the testimony of their expert witness explaining that plaintiffs expected Global Crossing or Sprint to pay the originating access charges. Again, this argument ignores the specific definition of "switched access service" in plaintiffs' tariffs. The name assigned to the traffic and the hopes of plaintiffs are irrelevant to the issue of whether Global Crossing or Sprint actually received services as defined in plaintiffs' tariffs.

Plaintiffs also attempt to distinguish MCI WorldCom Network Servs., Inc. v. Paetec Commc'ns, No. Civ.A.04-1479, 2005 WL 2145499, at *4 (E.D. Va. Aug. 31, 2005) on the grounds that the Paetec court found the charges at issue

to be unlawful.  This fact is irrelevant to the portion of the <u>Paetec</u> opinion relied

on by this court.  <u>Paetec</u> shows that the court must compare the actual service

provided to the defendant with the definition of the service in the applicable

tariff.  <u>See</u> <u>id.</u> at *4.  The fact that the court later found the charges to be

unlawful under <u>47 U.S.C. § 203(a)</u> because they were not included within the

plaintiffs' tariffs, <u>see</u> <u>id.</u> at *5, does not undermine the court's reasoning in this

case.  Moreover, plaintiffs' assertion that they are entitled to bill for access

charges pursuant to their tariffs only shows that they are entitled to bill the

entity that received the services, not that they are entitled to bill and recover

from any entity that touched the traffic.  Indeed, plaintiffs do not and cannot

argue that defendants are liable for access charges if they did not receive the

access services offered under the tariff.

Overall, plaintiffs seek to reargue their assertion that because of the

business relationships among the parties, all of defendants are liable under the

constructive ordering doctrine.  Plaintiffs ignore the language of their own

tariffs setting out the definition of "switched access service."  They do not argue

that TNCI, Global Crossing, or Sprint designated premises at which plaintiff-

LECs delivered traffic originating from end users, as is required under plaintiff-

LECs tariffs.  Nor do plaintiffs argue that TNCI, Global Crossing, or Sprint

provided any facilities at which SDN switched the Express traffic, as is required

under SDN's tariffs.  The court has considered plaintiffs' arguments and finds

that there are no material issues of fact in the record that could support

application of the constructive ordering doctrine to TNCI, Global Crossing, and

Sprint.  The court acknowledged in the summary judgment order that there are

various contractual arrangements among the parties purporting to allocate

liability for access charges.  Order at 52-53.  But these contractual

relationships are not before the court in this case.  Plaintiffs' motion for

reconsideration of this portion of the court's summary judgment order is

denied.

## II.     Motion to Reconsider Court's Finding that Onvoy Did Not Affirmatively Order Services Pursuant to Plaintiffs' Tariffs

Plaintiffs also seek reconsideration of the court's factual finding that

Onvoy did not subscribe to plaintiffs' switched access services by submitting an

access order as prescribed in the tariffs.  Plaintiffs ask the court to make a

finding that will enable them to argue to the trier of fact that Onvoy either

affirmatively or constructively ordered access services.  The court finds that

plaintiffs did not assert their alleged affirmative ordering theory with sufficient

clarity for the court to treat it as an independent ground for relief in ruling on

Onvoy's summary judgment motion and will not allow plaintiffs to raise that

argument now.

Looking first at Onvoy's motion to dismiss plaintiffs' claims against it,[2] Onvoy argued that it never ordered any services from any plaintiff, either by submitting an Access Order or by constructively ordering services. Memorandum of Law in Support of Defendant Onvoy, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Docket 22 (Civ. 06-3023) at 5-8, Docket 21 (Civ. 06-3025) at 5-8 ("Onvoy at no time submitted an Access Order to any plaintiff for access service, and therefore, Onvoy was not their customer and had no regulatory or contractual obligation to pay access charges."). Plaintiffs' response to Onvoy's motion to dismiss did not state that Onvoy affirmatively ordered services under plaintiffs' tariffs. Rather, plaintiffs only argued that Onvoy constructively ordered services. Plaintiffs summarized Onvoy's arguments and stated,

> Onvoy's Motion to Dismiss should be denied. Onvoy constructively ordered access service, including CEA service from Plaintiffs. Onvoy held itself out as the long distance service provider for services sold to Express; Onvoy received access services from Plaintiffs and was interconnected with Plaintiffs in a way in which it could have reasonably expected to receive such services from Plaintiffs; and Onvoy utilized the access and CEA services provided.

---

[2] Onvoy moved to dismiss plaintiffs' claims against it in member cases Civ. 06-3023 and Civ. 06-3025 before the cases were consolidated. Docket 21 (Civ. 06-3023); Docket 19 (Civ. 06-3025). Plaintiffs in the remaining member cases (Civ. 06-4221, Civ. 06-4144, and Civ. 07-3003) did not amend their complaints to allege claims against Onvoy until after the court ruled on Onvoy's motions to dismiss in member cases Civ. 06-3023 and Civ. 06-3025.

Response to Motion to Dismiss, Docket 51 (Civ. 06-3023) at 10-11, Docket 39

(Civ. 06-3025) at 10-11. Plaintiffs also addressed Onvoy's argument that it did

not order access services pursuant to plaintiffs' tariffs:

> Onvoy makes a related argument that it never "ordered" access
> service from any Plaintiff. While Plaintiffs submit that Onvoy
> indeed placed orders which were necessary to interconnect the
> networks, if not provide switched access service, this argument
> simply misses the mark. As the <u>Advamtel</u> Court explained, that is
> beside the point in a dispute over whether services have been
> constructively ordered. . . . Onvoy's arguments as to whether it
> actually filed proper access orders with the Plaintiffs is off the
> mark. **The issue is whether Onvoy constructively ordered such
> services through its actions.**

Docket 51 (Civ. 06-3023) at 13, Docket 39 (Civ. 06-3025) at 13 (emphasis

added). Thus, while plaintiffs asserted in passing that Onvoy "placed orders"

with plaintiffs, plaintiffs argued that the real issue was whether Onvoy

constructively ordered access services.

In ruling on Onvoy's motion to dismiss, the court characterized plaintiffs'

claims against Onvoy as follows:

> There is no dispute that plaintiffs were operating under validly filed
> tariffs. Rather, Onvoy and [TNCI] argue that the services were not
> provided pursuant to the tariff because Onvoy and [TNCI] did not
> order the services in the manner required by the tariffs. *Plaintiffs
> do not dispute that neither Onvoy nor [TNCI] ordered the services as
> required by the tariffs.* Instead, plaintiffs contend that Onvoy and
> [TNCI] constructively ordered the services, and thus, Onvoy and
> [TNCI] are required to pay the rates stated in plaintiffs' tariffs for
> the services they received.

Order, Docket 99 (Civ. 06-4221) at 8, Docket 71 (Civ. 06-3025) at 10 (emphasis

added). None of plaintiffs, either in the member cases the order applied to or in

the remaining member cases, ever explicitly challenged the court's

understanding of plaintiffs' claims against Onvoy.[3]

Looking now at plaintiffs' response to Onvoy's motion for summary

judgment, plaintiffs made only passing reference to an affirmative ordering

theory.  In responding to Onvoy's argument that Express, rather than Onvoy,

was the customer under plaintiffs' tariffs, plaintiffs argued that there are

disputed issues of material fact regarding whether Onvoy was responsible for

the access charges or was the customer under plaintiffs' tariffs.  Plaintiffs

asserted (without citing the language of their tariffs), that the service offered

under their tariffs is a two-point communications path between an end user

---

[3] Plaintiffs filed the Affidavit of Mark Shlanta, CEO of SDN, in conjunction
with their opposition to Onvoy's motion to dismiss.  Shlanta stated, "[t]here is a
dispute between the parties in reference to what constitutes an Access Service
Request ('ASR') in the industry.  An 'industry standard' ASR is a formal
document that outlines what the ordering party is requesting.  When parties
work closely together, a 'non-industry standard' ASR can be utilized, and can
come in the form of an e-mail, fax, letter etc.  The request by Onvoy in this
situation came in the form of a 'non-industry standard' ASR."  Affidavit of Mark
Shlanta, Docket 52 (Civ. 06-3023) at ¶ 6, Docket 40 (Civ. 06-3025) at ¶ 6.
Shlanta also stated, "SDN believes that the entity which ordered services from
Plaintiffs was Onvoy.  Onvoy did submit an order to SDN for the 22 T-1s and
did actually receive services from the Plaintiffs."  Docket 52 (Civ. 06-3023) at
¶ 9; Docket 40 (Civ. 06-3025) at ¶ 9.  But the court did not consider Shlanta's
affidavit when ruling on Onvoy's motion to dismiss.  Order, Docket 99 (Civ. 06-
4221) at 9 n.3, Docket 71 (Civ. 06-3025) at 11 n.3.  And the assertions of one
of the parties in an affidavit is not sufficient to put the court and Onvoy on
notice that plaintiffs asserted a separate legal claim under the affirmative
ordering doctrine, particularly when they only argued the constructive ordering
doctrine in their brief.

premise and an interexchange carrier, and that the entity that establishes the two-point communications path is the customer. Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment Filed by Onvoy, Inc., Docket 207 at 14. Plaintiffs then argued that Onvoy created a two-point communications path by establishing the connection between SDN and Onvoy:

> [W]hen Onvoy ordered services from the Plaintiffs, it submitted an order to SDN for the 22 (T-1s) Feature Group D Circuits that created this communication path. The request for services from Onvoy came via a series of e-mails and a Design Layout Record. In fact, in its Brief, Onvoy admits to being the owner of the trunk. The facts in the record show that there are material questions of fact as to whether Onvoy, not Express, is the customer responsible to the LECs and SDN for all access charges under the tariff.

Id. at 15-16 (internal citations omitted). Although plaintiffs argued that Onvoy was the customer under their tariffs because it established the communications path, they did not argue that Onvoy's actions satisfied the ordering provisions of plaintiffs' tariffs or that establishing the communications path constituted "affirmative ordering." Thus, plaintiffs did not allege that Onvoy affirmatively ordered services pursuant to the ordering provisions of plaintiffs' tariffs in this section of their brief.

Plaintiffs argued that the constructive ordering doctrine applies to Onvoy. Plaintiffs set out the requirements of this doctrine and argued, "[a]s the Advamtel and other similar cases illustrate, if Onvoy intends to avail itself of the defense that it did not affirmatively order any services, it must also establish that it did not constructively order such services." Id. at 20.

Plaintiffs' passing mention of the affirmative ordering theory does not

constitute a legal argument that Onvoy did, in fact, affirmatively order services.

Plaintiffs went on,

> In this case, there is first of all a dispute as to whether
> Onvoy ordered services from Plaintiffs.  Onvoy argues that Express,
> not Onvoy, ordered services from the Plaintiffs.  That contention is
> not supported by the facts.  Onvoy either actually or constructively
> ordered services from SDN in September of 2004, via fax and a
> Design Layout Record.  Specifically, Onvoy supplied T1's so Onvoy
> could "pick up" the long distance traffic of Express.  Although
> Onvoy apparently disputes this fact, Plaintiffs submit the order for
> services came in the form of a "non-industry standard" ASR, and
> such an order has been found to be adequate by courts in their
> consideration of the constructive ordering doctrine.  See Advamtel
> II, at 802 (IXCs must pay not only for services ordered pursuant to
> the terms specified in tariffs, but also for services that are
> constructively ordered).

Id. at 20 (internal citations to the record omitted).  In this passage, plaintiffs

asserted that Onvoy either actually or constructively ordered services from SDN

by faxing a design layout record.  But beyond the bare assertion that Onvoy

actually ordered services, plaintiffs did not set forth a legal argument that the

correspondence between Onvoy and SDN satisfied the ordering provisions of

plaintiffs' tariffs.  Indeed, plaintiffs did not set out or provide the court with the

ordering provisions of their tariffs or argue that an informal series of emails or

faxes could satisfy the requirements therein.[4]  Moreover, plaintiffs explicitly

---

[4] Plaintiffs now cite the assertion of their expert witness that an "access order" can take whatever format of order that the receiving party will accept, but even this conclusory assertion does not argue that an informal format is acceptable pursuant to the language of plaintiffs' tariffs.

argued that a "non-industry standard" access order was adequate to satisfy the requirements of the constructive ordering doctrine, not that such an order was adequate to satisfy the tariff's ordering requirements. Thus the court interprets this passage as supporting plaintiffs' constructive ordering theory, not as advancing an affirmative ordering theory.

Prior to their present motion for reconsideration, plaintiffs did not articulate an argument that Onvoy affirmatively ordered access services pursuant to plaintiffs' tariffs. This is not to say that plaintiffs have the burden of proving an affirmative ordering theory at the summary judgment stage. But plaintiffs do have to set out their theories of recovery with sufficient clarity that the court and opposing parties know that plaintiffs assert each theory of recovery. Plaintiffs failed to do that here.

A party cannot tender new legal theories for the first time on a motion for reconsideration. Concordia College, 999 F.2d at 330. Plaintiffs had an opportunity to set forth the argument that Onvoy affirmatively ordered access services pursuant to the ordering provisions of plaintiffs' tariffs in their opposition to Onvoy's motions to dismiss and for summary judgment, but they failed to do so. Now, without presenting any newly discovered evidence or identifying any manifest errors of law, plaintiffs attempt to rehash arguments that the court resolved in the summary judgment order. That is not the purpose of a motion for reconsideration. See id.; see also Hagerman, 839 F.2d

[at 414](). The court's finding that "none of defendants subscribed to plaintiffs' switched access services by submitting an Access Order as prescribed in the tariffs," is consistent with the record and will not be modified. Plaintiffs will not be allowed to present their new argument that Onvoy affirmatively ordered access services by complying with the ordering requirements of plaintiffs' tariffs at trial.[5] Plaintiffs' motion to reconsider this portion of the summary judgment order is denied.

For the reasons set for herein, it is hereby

ORDERED that plaintiffs' motion for reconsideration and relief from the court's Memorandum Opinion and Order dated September 29, 2009 (Docket 254) is denied.

Dated February 11, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
_____
KAREN E. SCHREIER
CHIEF JUDGE

---

[5] Plaintiffs will be able to present any admissible evidence that is relevant to their claim that Onvoy constructively ordered access services. Presumably, some, if not all, of the facts plaintiffs advance in favor of their new affirmative ordering theory will be relevant to the issues raised by the constructive ordering doctrine.